Jean CONDRAN, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (H.B. REESE CANDY CO.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 28, 1998.

Decided Nov. 10, 1998.

Reargument Denied Jan. 12, 1999.

---

Harry W. Reed, Jr., Lebanon, for petitioner.

Robert J. Goduto, Harrisburg, for respondent.

Before FLAHERTY and LEADBETTER, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

This appeal is brought by Jean Condran (Claimant) from a Decision and Order of the Workers' Compensation Appeal Board (Board) affirming the Workers' Compensation Judge's (WCJ) grant of H.B. Reese Co.'s (Employer) Petition to Suspend benefits. The primary issue presented on appeal is whether the WCJ erred as a matter of law by concluding that Employer met its burden of producing a referral to an open job which Claimant was medically cleared to perform.

Claimant worked for Employer as a bagger in the Kit Kat Department when she suffered a work-related injury on May 10, 1991. At the end of her shift Claimant was leaving work when she fell off a sidewalk curb sustaining a fractured left foot, sprained ankle and back injury. Employer issued a notice of compensation payable pursuant to which Claimant was paid total disability benefits at a rate of $368.75 per week based on an average weekly wage of $553.10.

Employer's medical department referred Claimant to Tristan Associates and Dr. Balog for an x-ray and treatment of her foot fracture and ankle sprain. By way of referral, Claimant subsequently treated with Drs. Blaisdel, Wetzel, and Kuhlengel for her back injury. In June 1992 and again in May 1993, GAB Business Services, Employer's workers' compensation claims administrator, directed Claimant to report for an independent medical examination (IME) with John S. Rychak, M.D., a board certified orthopedic surgeon.[1] Dr. Rychak examined Claimant and released her for light-duty work at four hours per day with pain management training and physical therapy recommended for an additional four hours per day. Since April 4, 1994, Claimant has primarily treated with David C. Trostle, M.D., board certified in Internal Medicine and Rheumatology.

On March 28, 1994, Employer mailed Claimant a notice of available work starting April 4, 1994 at her time of injury wage. The letter indicated that Employer received notice that Claimant was medically cleared to return to work at a sedentary/light-duty capacity. Employer offered Claimant a "pat-

---

1. Regarding the June 1992 IME, Dr. Rychak reported that he was not provided with Claimant's complete medical records prior to the examination. Additionally, he reported that Claimant was angry, frustrated and less than cooperative as a result of being required to see multiple physicians. As such, Dr. Rychak was not able to obtain a complete medical history and he concluded that conducting a physical examination at that time would have been futile. Having subsequently obtained the complete medical records, Dr. Rychak conducted a complete IME in May 1993. (Deposition of Dr. Rychak, at 9–11, R.R. at 55a–57a).

down, load books, Kit–Kat molding" position at eight hours per day, five days per week. Claimant informed Employer that she could not return to work on April 4, 1994 due a previously scheduled doctor appointment. Employer responded that Claimant would be expected to report to work the following day, April 5, 1994. Claimant failed to ever report to work for Employer, which prompted Employer to file a Petition to Suspend benefits effective April 4, 1994.

The WCJ held hearings in this matter on June 24, 1994 and September 28, 1994. Claimant testified on her own behalf and presented the deposition testimony of Dr. Trostle. Employer presented the testimony of its safety supervisor, Rhonda Kurtz, and the deposition testimony of Dr. Rychak.

Dr. Trostle testified that he reviewed Claimant's CT Scan and concluded that her May 10, 1991 work injury caused a left posterolateral herniation at the L5–S1 disc with probable compression of the left L5 nerve root. Dr. Trostle further diagnosed Claimant as suffering from post-traumatic or reactive fibromyalgia secondary to her work related injury.[2] Dr. Trostle opined that Claimant continues to suffer chronic diffuse pain as a result of her work injury, which precludes her from performing even light-duty work. (Deposition of Dr. Trostle, at 10–13, R.R. at 187a–190a).

Dr. Rychak testified that he found no evidence of fibromyalgia and that his physical examination revealed only sparse objective findings regarding Claimant's low back injury. Dr. Rychak stated that he found no objective medical evidence that Claimant suffered a herniation of the L5–S1 disc. Dr. Rychak further testified that he preferred to have Claimant undergo a functional capacity

evaluation (FCE) before recommending a return to work. From what could be gleaned from the record, an FCE is a medical assessment conducted over an eight-hour period, which tests an individual's physical capabilities including their strength, flexibility, stamina and a measure of whether the patient is consistently providing a full volitional effort.[3]

Relying on the results of the FCE, Dr. Rychak released Claimant to return to work. Dr. Rychak's release restricted Claimant to perform sedentary, light-duty work for four hours per day in conjunction with an additional four hours of physical therapy and pain management training each day. Dr. Rychak opined that "[t]he goal of the therapy would be to improve her flexibility and endurance which may make her more feasible for employment, along with psychological counseling which will address her focus on pain." (Deposition of Dr. Rychak, at 49, R.R. at 95a). Dr. Rychak concluded that Claimant would progress to an eight-hour, five day a week light-duty position after completing the physical therapy and pain management counseling.

After considering the evidence the WCJ issued a decision granting Employer's Petition to Suspend Claimant's benefits effective April 8, 1994. The WCJ found the testimony of Dr. Trostle less than credible largely because he first saw Claimant nearly three years after her injury and was not provided numerous medical records on which to formulate an opinion. (WCJ Decision, May 24, 1996, Finding of Fact No. 33, at 8, R.R. at 235a). The WCJ found the testimony of Dr. Rychak persuasive and credible based on his thorough examination and review of numerous medical records and diagnostic studies.[4]

**2.** Reactive Fibromyalgia is a trauma induced disease in which a patient suffers from diffuse aches and pains, fatigue, stiffness, numbness, tingling headaches, and abdominal pains of a long-standing nature. (Deposition of Dr. Trostle, at 10, R.R. at 187a.).

**3.** Dr. Rychak testified that Claimant's eight-hour FCE showed that she "could sit, she could use her hands.... They felt 10 pounds was able to be handled [sic], carrying occasionally 15 pounds, pushing/pulling 45 pounds. Frequently, she could pull upwards of 65 pounds. Then she could sit for 30-minute durations frequently,

stand for 20 minute durations frequently again. There was [sic] no restrictions on hand function." (Deposition of Dr. Rychak, at 41).

**4.** It is well settled that the WCJ is the ultimate fact-finder with exclusive authority over questions of witness credibility and evidentiary weight. Our appellate function is limited to determining whether the evidence believed by the WCJ is sufficient to support his or her findings and conclusions. *Hills Department Store # 59 v. Workmen's Compensation Appeal Board (McMullen)*, 166 Pa.Cmwlth. 354, 646 A.2d 1272 (Pa. Cmwlth.1994).

(Finding of Fact No. 34). Further, the WCJ found that Claimant lacked credibility regarding her complaints and limitations and that she failed to make a good faith effort to return to available employment. (Finding of Fact No. 23).

Claimant appealed the WCJ's Decision to the Board, which affirmed the suspension of benefits. The Board affirmed the WCJ's decision that Employer sustained its burden of proving that work was available within Claimant's capabilities and that Claimant had failed to pursue this job in good faith. Claimant now appeals the Board's order to this Court.[5]

On appeal, Claimant argues that the WCJ's decision is not based on substantial evidence [6] of record because the record does not contain evidence showing that Dr. Rychak released Claimant to work an eight-hour shift. Employer argues that the WCJ properly exercised his discretion as fact finder by concluding that Employer met its burden of producing a position within Claimant's capabilities. Specifically, Employer asserts that the WCJ relied on Dr. Rychak's response to a question asking that he render an opinion based solely on a review of Claimant's MRI and clinical examination results regarding Claimant's ability to work the eight hour shift. Limiting his focus to these two sources of information, Dr. Rychak responded that he saw no contraindication for Claimant performing the position as offered by Employer.[7] Claimant counters that Dr. Rychak made this statement in response to a hypothetical question based on artificial parameters. Claimant argues that Employer extracted this statement from Dr. Rychak by asking him to hypothetically render an opinion by ignoring the primary source of support for his recommended restrictions on Claimant's return to work. Claimant asserts that it was Dr. Rychak's answer to this hypothetical question, based on a set of facts

different from those relied upon in formulating Claimant's release restrictions, which the WCJ and the Board relied upon in suspending Claimant's benefits. We agree with Claimant's position and now reverse the Board's order affirming the WCJ's decision.

█ We begin by noting that Dr. Rychak was the only witness found credible by the WCJ. Therefore, our review will focus on the WCJ's findings of fact relevant to Dr. Rychak's testimony. The standard governing this inquiry was set forth by the Pennsylvania Supreme Court in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). *Kachinski* defined the burdens placed on each party in situations where an employer seeks to suspend benefits because an injured employee is allegedly capable of returning to work. This standard provides that:

1) The employer bears the burden of producing medical evidence showing recovery of some or all of the claimant's abilities as demonstrated by evidence of a change in condition;

2) The employer must then produce evidence of a referral to an open job which the claimant is medically cleared to perform;

3) The burden then shifts to the claimant who must follow through on the job offer in good faith;

4) If the offer fails to result in a job, the claimant's benefits should continue.

*Kachinski* at 251–52, 379–80. Applying the *Kachinski* standard to the instant case, it is clear that Employer satisfied its initial burden of establishing through medical evidence that Claimant's condition had changed and that she recovered some of her capabilities lost as a result of her work-injury.

---

5. Our scope of review in a workers' compensation appeal is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

6. Substantial evidence has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Pavonarius v. Workers' Compensation Appeal Board (Samuel Levitt Sheet Metal, Inc.)*, 714 A.2d 1135 (Pa.Cmwlth.1998).

7. (Deposition of Dr. Rychak, at 78, 79).

This case turns on the second prong of *Kachinski*, which consists of two components. First, an Employer must produce a referral to an open job and, second, the characteristics of the job must be consistent with the medical restrictions specified in Claimant's medical release. The record contains substantial evidence supporting the WCJ's finding that Dr. Rychak determined that Claimant was sufficiently recovered to enable her to return to work at a sedentary, light-duty capacity. Reviewing the record as a whole, it is clear that Employer did not meet its burden regarding the second component of *Kachinski's* second prong. As the following passages of testimony demonstrate, Dr. Rychak relied on the FCE report in restricting Claimant's return to work release starting with a four-hour shift and then progressing to an eight-hour shift:

Q) Doctor, just keep Exhibit D–1 in front of you. I believe that you said that you relied in part on the functional capacity report you had previously received in making your medical opinion that [Claimant] could perform the job?

A) Correct.

Q) Now, am I correct that the functional capacity report recommends that she be returned at a four-hour-per-day job and then progressively work into an eight-hour full-time position?

A) Correct.[8] ...

Q) ... Were you sent additional job descriptions other than the three that are attached to your letter?

A) These job descriptions that I was sent, I did not comment to yeah or nay on these. I signed them and on the three job descriptions I indicated "see letter," meaning see the letter that accompanied these three.

The reason I sent the letter was I felt it would be worth [sic] instead of subjectively looking at a job, subjectively saying can this person perform this, I felt it was imperative that we have a functional capacity done to find out could this person handle this job.

... First perusal, I don't particularly see that particular job signed off by me in my records. I was asked do I feel this patient could handle the job and I have already testified *yes, per the functional capacity assessment.* And I would go with the recommendations of the functional capacity assessment, meaning it would be a half-day progressed to full time.[9]

Throughout his testimony Dr. Rychak always maintained that he relied upon the FCE in deciding to restrict Claimant's release to four hours per day. Essentially, Dr. Rychak had three available sources of medical evidence in the form of diagnostic studies (MRI and CT Scan), his medical examination of Claimant, and the FCE. It is clear from Dr. Rychak's testimony that the diagnostic studies and clinical examination did not provide him with sufficient information to formulate an opinion to a reasonable degree of medical certainty. Addressing this point, Dr. Rychak stated that "before I would comment on whether this patient was capable of employment, *I didn't want to formulate an opinion.* I wanted fact as to what she could or could not do and that is what led to the FCE being done, the functional capacity you have there." (Deposition of Dr. Rychak, at 49) (emphasis added).

■ Realizing that the FCE relied upon by Employer's medical expert could preclude the suspension of benefits, Employer's counsel astutely extracted the desired medical opinion by asking Dr. Rychak to offer his opinion based solely on the diagnostic studies and his examination findings. Without this source of support for his opinion, Dr. Rychak testified that focusing on the MRI itself and the clinical examination, there was no contraindication to Claimant performing the job as offered. (Deposition of Dr. Rychak, at 78–79).

Relying on this lone statement by Dr. Rychak, which was prompted by a hypothetical scenario, the WCJ reached the legal conclusion that Employer satisfied its burden of producing a position which satisfied Dr. Rychak's restrictions. (Finding of Fact No. 35).

---

8. (Deposition of Dr. Rychak, at 43, 44).

9. (Deposition of Dr. Rychak, at 46–48) (emphasis added).

The WCJ erroneously reached this conclusion based on Dr. Rychak's response to a question asking that he ignore the primary source of support for the four-hour per day restriction, namely the FCE report. One must employ pretzel logic to enable Employer to satisfy the second prong of *Kachinski* by manipulating the evidence through hypothetical questions in order to extract a medical statement which contradicts the factual medical testimony.

 This Court is keenly aware of the well settled rule that it is within the discretion of the WCJ to accept or reject the testimony of any witness, including medical witnesses, in whole or in part. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378 (Pa. Cmwlth.1997). However, it does not follow that the WCJ may accept a fiction at the expense of factual reality. It is equally well settled that when reviewing the determination of the WCJ the appellate court must ascertain whether, upon consideration of the evidence as a whole, the findings of fact have the requisite measure of support in the record. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). In reviewing the testimony as a whole, it is clear that Dr. Rychak did not offer competent medical testimony releasing Claimant to return to work an eight-hour shift. The WCJ found Dr. Rychak's testimony credible without qualification. This lone statement is juxtaposed to Dr. Rychak's entire body of testimony and, given the context in which it was derived, does not constitute substantial competent evidence upon which the WCJ may rely in suspending Claimant's benefits. Having determined that Employer failed to satisfy the second prong of *Kachinski*, we need not reach the issue of whether Claimant made a good faith effort to perform the offered job since the burden never shifted to her to make this showing.

Accordingly, we reverse the Board's order upholding the WCJ's decision suspension of Claimant's benefits effective April 8, 1994.

### ORDER

AND NOW, this 10th day of November, 1998, the order of the Workers' Compensation Appeal Board, dated April 30, 1998, is hereby reversed and Claimant's benefits are reinstated effective April 8, 1994.