**LAHR MECHANICAL and State Workers' Insurance Fund, Petitioners**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (FLOYD), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 3, 2007.

Decided Oct. 9, 2007.

Eric J. Stark, Harrisburg, for petitioner.

Paul D. Clouser, Lancaster, for respondent.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this workers' compensation appeal, we consider the calculation of an average weekly wage (AWW) where a claimant earns two different hourly wages in the same workweek while working for the same employer. Lahr Mechanical and the State Workers' Insurance Fund (collectively, Employer) petition for review of an order of the Workers' Compensation Appeal Board (Board) affirming as modified a Workers' Compensation Judge's (WCJ) order granting Michael Floyd's (Claimant) petition to review the calculation of his AWW. Utilizing Section 309(d.2) of the Workers' Compensation Act (Act),[1] the WCJ calculated Claimant's AWW by multiplying his highest hourly wage by the number of hours expected to work per week. On appeal, the Board, using the same formula, considered the Fair Labor Standards Act (FLSA)[2] to account for hours worked at a lower hourly rate. The Board's calculation resulted in a slightly lower AWW that did not disturb Claimant's compensation rate.

In the present appeal, Employer asserts the Board exceeded its scope of review by using the FLSA's regulations to ascertain Claimant's hourly wage for AWW purposes. It further contends the Board's calculation is unsupported by the evidence. For the following reasons, we reverse the Board's order and reinstate the WCJ's decision.

Claimant worked as welder for Employer beginning March 2, 2005. Prior to his employment, Claimant and Employer established the following wage schedule: Claimant earned $18.00/hour for local jobs and travel (local rate); $27.54/hour for non-local work (prevailing wage); and $41.31/hour for overtime work.

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(d.2).

2. 29 U.S.C. §§ 201–219.

For the first two days of work, Claimant completed an "endurance test" and earned the local rate. Thereafter, Claimant reported to Employer's job site in Maryland. While working in Maryland, Claimant earned wages at the prevailing and overtime rates as well as the local rate for travel time. Importantly, Claimant did not perform local work after the initial endurance test.

Less than 13 weeks after commencing work for Employer, and while working in Maryland, Claimant sustained lacerations and fractures to his left hand and fingers. Employer issued a timely notice of compensation payable (NCP) accepting liability for the injury which set forth Claimant's AWW as $720.00 per week ($18/hour × 40 hours) for a weekly compensation rate of $480.00.

Claimant filed the instant petition to review compensation asserting Employer erroneously calculated his AWW. In addition to the above-noted earnings schedule, Claimant credibly testified he expected to work mostly prevailing wage jobs based on pre-employment discussions with Employer; he would not have accepted jobs at the local rate; and, due to his work injury, he rejected other high paying job offers. The WCJ also found Claimant's testimony that he expected to work an average of eight to ten hours per week in overtime credible.[3]

Of particular relevance, the WCJ rendered the following findings:

6. [Claimant] testified, and the *judge finds that [Claimant] performed work at an hourly wage rate of $18.00 for two days at Mr. Lahr's home ... as a hiring test of [Claimant's] knowledge and* then [worked] *at an hourly rate of $27.54 and at a rate of one and one-half times $27.54, or $41.31 per [hour], for overtime work and during his performance of an average of 48 to 50 hours per week at an assigned job in Maryland for the duration of his employment with* [Employer]. [Claimant] testified, and the judge finds that *[Claimant] was paid at the rate of $18.00 per hour for two hours per week for his travel* to the job site in Maryland during his performance of eight weeks of work for [Employer], did not travel during his performance of work at the job site in Maryland, and stayed in a motel during the work week.

7. About overtime work, [Claimant] testified, and the judge finds that [Claimant] worked an average of eight to ten hours of overtime work per week during his five day work weeks on the job in Maryland.

. . .

12. *Based on the evidence, including the testimony of [Claimant] and Mr. Lahr and [Claimant's] wage records, the judge finds that [Claimant] had an hourly wage rate of $27.54 for his work with [Employer] on and about April 28, 2005 and that there was an expectation of 58.5 hours of work for [Claimant]* under the terms of employment between [Employer] and [Claimant], or the numbers of hours of [Claimant's] performance of work at the regular wage rate for 40 hours, at the overtime wage rate of 14.5, and at the travel rate for 4 hours *during the week of [Claimant's] last performance of work for [Employer].*

---

**3.** Employer's witness, Frederick Lahr, verified the hourly wage schedule established before Claimant commenced working. In addition, Mr. Lahr stated Employer's workers were expected to remain in Maryland until the job concluded. Upon their return to Pennsylvania, workers would be paid in accordance with their negotiated local wage rates. Although the WCJ found Mr. Lahr credible, she determined Claimant was more persuasive. WCJ Op., 6/9/06, at 1.

Based on the evidence, including the testimony of [Claimant] and Mr. Lahr and [Claimant's] wage records, the judge finds that [Claimant] did not have fixed weekly wages with [Employer] and performed work for [Employer] for less than a complete period of 13 calendar weeks by the date of the work injury. WCJ Op., 6/9/06, Finding of Fact (F.F.) Nos. 6, 7, 12 (emphasis added). In accord with Finding No. 12, and without regard to Claimant's actual overtime earnings, the WCJ calculated Claimant's AWW pursuant to Section 309(d.2) of the Act. The calculation resulted in an AWW of $1,611.09 ($27.54 × 58.5 (40 hours regular time, 14.5 hours overtime, and 4 hours travel time)) and a compensation rate of $716.00 per week. Significantly, Finding No. 12 reflects the number of hours Claimant performed during his final week of work.[4] *See* Employer's Ex. dated 11/16/05.

On cross-appeals to the Board, both parties asserted the WCJ's AWW calculation did not accurately reflect Claimant's earnings. Acknowledging the WCJ is free to set Claimant's weekly work expectation at 58.5 hours, the Board nevertheless determined the WCJ's calculation improperly disregarded Claimant's different hourly wages earned during the same week, that is wages earned for travel ($18.00/hour) and welding work ($27.54/hour).

Further recognizing Section 309(d.2) does not address the situation here, the Board sought guidance from the FLSA and its regulations, which provide for the calculation of a regular pay rate for overtime pay purposes where the worker earns two or more rates.[5] With this in mind, and without consideration of Claimant's overtime earnings, the Board established a new hourly rate by averaging Claimant's wages paid at each rate, and then multiplying the new hourly rate by the number of expected work hours. The resulting Board calculation set Claimant's AWW at $1,591.76, a slight reduction from the WCJ's calculation.[6] The reduction, however, did not impact Claimant's receipt of the maximum state compensation rate of $716.00 per week.

■ On appeal, Employer asserts error in the Board's application of the FLSA's regulations on its own accord. Additionally, Employer contends the Board's AWW calculation is unsupported by the evidence. The determination of a claimant's AWW is

---

4. The WCJ further found Employer engaged in a reasonable contest and, as a result, denied Claimant counsel fees. On appeal, the Board affirmed. The issue of reasonable contest is not raised here.

5. Specifically, 29 C.F.R. § 778.115, relating to Overtime Pay Requirements, provides:

Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.....

6. Mathematically, the formula is expressed as follows:

| 56.5 hours × $27.54 (prevailing wage) | = $1,556.01 |
| 2 hours × $18.00 (travel time) | = $ 36.00 |
| | $1,592.01 |
| $1,592.01 ÷ 58.5 | = $ 27.21 (new hourly rate) |
| $27.21 × 58.5 | = $1,591.76 (new AWW). |

a question of law, and thus, our review is plenary. *Scott v. Workers' Comp. Appeal Bd. (Crown Cork & Seal Co./Ace Am. Ins. Co.)*, 895 A.2d 68 (Pa.Cmwlth.2003); *Envtl. Options Group v. Workers' Comp. Appeal Bd. (Brown)*, 787 A.2d 460 (Pa.Cmwlth. 2001).[7]

Preliminarily, we note the Act is remedial legislation designed to compensate claimants for earning losses occasioned by work-related injuries. *Triangle Bldg. Ctr. v. Workers' Comp. Appeal Bd. (Linch)*, 560 Pa. 540, 746 A.2d 1108 (2000). To that end, the Act "must be liberally construed to effectuate its humanitarian objectives," and "[b]orderline interpretations of [the] Act are to be construed in [the] injured party's favor." *Reifsnyder v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 584 Pa. 341, 348, 883 A.2d 537, 542 (2005) (quoting *Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder, Jr.)*, 575 Pa. 66, 834 A.2d 524 (2003)).

■ The first issue raised on appeal is the Board's calculation of Claimant's AWW pursuant to Section 309(d.2) of the Act. Employer, while not disputing the applicability of Section 309(d.2), contends the Board assumed a legislative function by defining the term "hourly wage rate" in accord with federal legislation.

Section 309(d.2) of the Act provides, with added emphasis:

If the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, *the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment.*

77 P.S. § 582(d.2). The term "wages" is not defined by the Act but is generally recognized as "compensation given to a hired person for his or [her] services, based on time worked or output of production." *Scott*, 895 A.2d at 71. *See* 1 Pa.C.S. § 1903 ("[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage").

Ordinarily not a difficult task, the determination of a claimant's hourly wage is nevertheless a question of fact to be answered by the WCJ.[8] Here, both parties testified regarding their pre-employment agreement as to Claimant's expected wages. The parties further presented the WCJ with Claimant's earnings statement indicating the wages for each type of work performed as well as the number of hours Employer paid Claimant at each wage. Based on this evidence, the WCJ was free to set Claimant's hourly wage rate at $27.54/hour so long as the record supports her finding. Section 428 of the Act, 77 P.S. § 834; *Condran v. Workers' Comp. Appeal Bd. (H.B. Reese Candy Co.)*, 721 A.2d 1133 (Pa.Cmwlth.1998).[9]

---

7. We are limited to determining whether the necessary findings were supported by substantial evidence, whether errors of law were made, or whether constitutional rights were violated. *Pryor v. Workers' Comp. Appeal Bd. (Colin Serv. Sys.)*, 923 A.2d 1197 (Pa.Cmwlth. 2006).

8. A "question of fact" is:
   1. An issue that has not been predetermined and authoritatively answered by the law.... 2. An issue that does not involve what the law is on a given point. 3. A disputed issue to be resolved by the jury in a jury trial or by the judge in a bench trial.—Also termed *fact question*. See FACT-FINDER. 4. An issue capable of being answered by way of demonstration, as opposed to a question of unverifiable opinion. Black's Law Dictionary 1280 (8th Ed.2004).

9. In making such a determination, a WCJ may review federal law and other persuasive authority for guidance in calculating a claimant's hourly wage when presented with the situation here. As previously noted, the Act

The desire of the Board to attain a more predictable result is noteworthy. However, the legislative scheme of a less structured determination of "hourly wage rate" under these circumstances must be preserved. We therefore conclude the Board exceeded its authority when it redetermined Claimant's hourly wage.

■ Our conclusion leads us to consider whether the record supports the WCJ's recalculation order. More specifically, Employer maintains the record does not support the findings Claimant earned $27.54/hour and was expected to work 58.5 hours per week. Rather, Employer asserts the record demonstrates Claimant earned $18.00/hour for local jobs; there was no guarantee Claimant would continue to work prevailing wage jobs; and, Employer laid off its other workers after completion of the Maryland job.

The overall legislative purpose of Section 309 is to provide an accurate measurement of the AWW. As the Supreme Court explained in *Triangle Building Center:*

> The Act seeks to compensate claimants for the ongoing loss in earning capacity resulting from their injuries; therefore, some reasonable assessment must be made of claimants' pre-injury ability to generate future earnings. Section 309 directs the focus to the employee's past performance, often measured over a period of time, as the gauge for determining this future earning potential.....
>
> *The mechanics of the legislative scheme demonstrate the General Assembly's intention that the baseline figure from which benefits are calculated should reasonably reflect the economic reality of a claimant's recent pre-injury earning experience,* with some benefit of the doubt to be afforded to the claimant in the assessment. (Emphasis added.)

560 Pa. at 548, 746 A.2d at 1112 (emphasis added).

The WCJ's hourly wage determination here meets the Act's laudable goals. More specifically, Claimant credibly testified that under the employment agreement, he earned $27.54/hour for prevailing wage jobs, and he would not have accepted local wage jobs because of the availability of higher paying work. Notes of Testimony (N.T.), 11/16/05, at 5; N.T., 1/19/06, at 8, 11–12; F.F. No. 4. The WCJ was free to accept Claimant's testimony his prevailing wage was $27.54/hour and to reject any contrary testimony. *Lehigh County Vo-Tech Sch. v. Workmen's Comp. Appeal Bd. (Wolfe),* 539 Pa. 322, 652 A.2d 797 (1995) (credibility determinations are within exclusive province of the WCJ).

In addition, Claimant's earnings statement supports the WCJ's determination. The statement shows Claimant worked a total of 398 hours for Employer. Employer's Ex. dated 11/16/05. Of these hours, Employer paid Claimant 34 hours, or 9% of the total hours, at the local rate. *Id.* Additionally, Claimant worked at the prevailing rate a total of 292 hours, or 73% of his total work hours. *Id.* The remaining 72 hours were overtime work.

Comparing wages received, Claimant earned 69% of his wages based on the prevailing wage and only 5% of his wages at the local rate. *Id.* Claimant also earned 26% his wages at the overtime rate.

---

does not define the term "hourly wage," which hinders the application of Section 309(d.2) in these circumstances. It is not uncommon for the courts and administrative agencies to look outside Pennsylvania jurisprudence when considering matters not expressly addressed by statutory, case or common law. *See Pa. Bankers Ass'n v. Pa. Dep't of Banking & Trumark Fin. Credit Union,* 893 A.2d 864 (Pa.Cmwlth.2006), *appeal granted,* 591 Pa. 729, 920 A.2d 835 (2007).

This evidence shows that except for travel time, Claimant earned mostly the prevailing wage. Thus, use of Claimant's prevailing wage more accurately measures Claimant's recent pre-injury earnings. *Triangle Bldg. Ctr.* We therefore discern no error in the WCJ's hourly wage calculation for the purposes of Section 309(d.2).

■■■ We further find no error in the WCJ's determination of Claimant's expected number of work hours per week. The question of a claimant's expected number of hours per week is a question of fact for the WCJ, *Environmental Options Group*, and the WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned. *Minicozzi v. Workers' Comp. Appeal Bd. (Indust. Metal Plating, Inc.)*, 873 A.2d 25 (Pa.Cmwlth. 2005).

■■■ Moreover, "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Id.* at 29 (quoting *Delaware County v. Workers' Comp. Appeal Bd. (Baxter Coles)*, 808 A.2d 965, 969 (Pa. Cmwlth.2002)). We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings. *Minicozzi.* If the record contains such evidence, the findings must be upheld even though the record contains conflicting evidence. *Id.*

Relying on Claimant's earnings statement and in particular Claimant's final work week of April 25 through May 1, the WCJ here included 14.5 hours of overtime in Claimant's expected number of work hours per week. F.F. No. 12; Employer's Ex. dated 11/16/05. Also based on Claimant's last week of work, the WCJ included 4 hours per week of travel. *Id.* In total, the WCJ found Claimant's expected hours of work per week to be 58.5 (40 hours regular time, 14.5 overtime, and 4 hours travel time). *Id.* We reject Employer's argument that Claimant was expected to work an average of 44 hours per week. This argument challenges the weight afforded Claimant's earnings based on his last week of work, a matter solely reserved for the WCJ as fact-finder. *Wolfe; Minicozzi; Condran.*

Our decision in *Environmental Options Group* is instructive on this point. There, the claimant worked less than 13 weeks for the employer before sustaining a work injury. The employer issued an NCP calculating the claimant's AWW on part-time earnings of $8.00/hour. The claimant challenged the calculation maintaining he earned $23.71 per hour. The credible evidence established the lower wage rate applied only to driving to and from a work site. In addition, the claimant's pay stubs proved the employer paid the claimant an average of $22.20/hour. The claimant also credibly testified he worked full time.

A WCJ ultimately calculated the claimant's AWW by multiplying $22.20 by an expected 40 hours of work per week. In affirming the WCJ's AWW calculation, we rejected the employer's argument that the AWW calculation should be determined by utilizing the hours the claimant actually worked. Rather, we emphasized Section 309(d.2) requires the WCJ to look to the number of hours a claimant is "expected to work."

Here, in accord with *Environmental Options Group*, we conclude Employer's Ex. dated 11/16/05, evidencing Claimant worked 58.5 hours his last week of work, supports the WCJ's finding regarding Claimant's expected hours of work per week. *See also Erb v. Workers' Comp. Appeal Bd. (Steris Corp.)*, 812 A.2d 773 (Pa.Cmwlth.2002) (where an employee is expected to work overtime, such overtime

should be considered as part of the terms of his employment when calculating the AWW under Section 309(d.2)).[10]

In sum, we recognize a claimant's hourly wage is a question of fact for the WCJ. Here, the Board erred by recalculating Claimant's hourly wage to account for wages earned at the local rate. We further conclude the record supports the WCJ's findings regarding Claimant's hourly wage and expected hours of work per week. Accordingly, we reverse the Board's order and reinstate the WCJ's order calculating Claimant's AWW as $1,611.09.

### ORDER

AND NOW, this 9th day of October, 2007, for the reasons stated in the foregoing opinion, the order of the Workers' Compensation Appeal Board is **REVERSED** and the order of the Workers' Compensation Judge is **REINSTATED.**

10. We decline Claimant's invitation to recalculate his AWW to include overtime earnings in the Board's formula. On appeal to the Board, Claimant only questioned whether the WCJ erred in concluding Employer's contest was reasonable. Original Record Item 6. In addition, Claimant did not cross-appeal from the Board's order alleging it erroneously excluded Claimant's overtime earnings from its hourly wage calculation. We thus conclude Claimant waived this argument. *Wheeler v. Workers' Comp. Appeal Bd. (Reading Hosp. & Med. Ctr.)*, 829 A.2d 730 (Pa.Cmwlth.2003).

We further reject Employer's suggested alternative methods for calculating Claimant's AWW. Employer first suggests we should divide Claimant's total wages by the number of weeks worked. This matter, however, is governed by Section 309(d.2) which requires Claimant's AWW to be calculated by multiplying his hourly wage by expected number of work hours per week. 77 P.S. § 582(d.2).

Employer then urges recalculation of Claimant's AWW using the Board's formula but including Claimant's overtime earnings and recognizing an expected work week of 44 hours. Alternatively, Employer suggests we apply the Board's hourly wage of $27.21/hour to 44 hours per week. Any other calculation, Employer posits, more accurately reflects Claimant's pre-injury earnings. Because we conclude the WCJ's findings regarding hourly wages and expected weekly hours of work are supported by the record, a straightforward application of Section 309 is required.