IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lebanon Transit,       :
      Petitioner  :
           :
  v.         : No.  141 C.D. 2024
           : Submitted:  December 9, 2024
Philip Schaeffer (Workers'   :
Compensation Appeal Board),  :
     Respondent  :


BEFORE: HONORABLE ANNE E. COVEY, Judge
     HONORABLE LORI A. DUMAS, Judge
     HONORABLE STACY WALLACE, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE        FILED:  April 7, 2025


   Lebanon Transit (Employer) petitions for review of the January 24, 2024 opinion and order (Order) of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) June 2, 2023 decision and order (Decision) granting the Claim Petition for workers' compensation benefits filed by Philip Schaeffer (Claimant) under the Workers' Compensation Act (Act).[1] After careful review, we affirm.

## BACKGROUND

   On August 2, 2022, Claimant filed a Claim Petition asserting that when he was working for Employer on May 21, 2021, he sustained an aggravation of the

---

[1]  Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

degenerative joint disease (DJD) in his right knee while installing a break drum wheel and tire assembly on a bus. Certified Record (C.R.) at Item No. 2. Claimant requested disability benefits beginning July 20, 2022. *Id*. Employer filed an Answer denying that Claimant was entitled to benefits. *Id.* at Item No. 3.

At the hearings before the WCJ, the WCJ received testimony from Claimant, as well as medical evidence from Christopher C. Cooke, M.D. (Dr. Cooke), Armando Mendez, M.D. (Dr. Mendez), and Dr. Myron Miller (Dr. Miller).

Claimant testified he worked as a heavy-duty bus technician for Employer for over seven years. Reproduced Record (R.R.) at 7a. He explained his job was physically demanding and required him to lift up to 175 pounds, work from a seated position, kneel, push, and pull. *Id.* at 7a-8a. Regarding the incident on May 21, 2021, Claimant indicated he was working in a seated position installing a bus brake drum that weighed approximately 85 pounds. *Id.* at 8a-9a. During the installation, the drum slipped, and Claimant caught it and pushed it back into place. *Id.* Claimant immediately experienced pain in his low back and right knee, which worsened as the day progressed. *Id.* at 9a. Claimant reported his injury to his maintenance supervisor and completed the required paperwork. *Id.* at 10a. Claimant continued to work full duty until he had right knee surgery on July 20, 2022. *Id.* at 11a-12a.

Following his knee surgery, Claimant was out of work from July 20, 2022, until October 3, 2022. *Id.* at 12a, 53a. Although he returned to work, Claimant testified that he continued to experience pain in his right knee, which sometimes made it difficult to perform his job duties. *Id.* at 53a-54a. While he acknowledged pain and a lack of mobility in his right knee, Claimant indicated his right knee was doing "pretty good." *Id.* at 54a.

2

During his testimony, Claimant also discussed a previous 2017 right knee injury that occurred when he slipped on stairs at work. *Id.* at 12a-13a. Following this injury, he treated with Dr. Cooke for several months, during which he received a right knee injection and physical therapy. *Id.* at 13a. The injection provided Claimant temporary relief, but the pain returned. *Id.* at 14a. Claimant described the pain as "kind of a dull pain, nothing . . . debilitating." *Id.* at 30a. Claimant explained that after the May 2021 injury his knee "got[] progressively worse and to the point where [he would] just be simply walking and doing nothing[,] and the knee would actually feel like it was dislocated." *Id.* at 32a.

Claimant offered the report of Dr. Cooke, an orthopedic surgeon with Orthopedic Associates of Lancaster. *Id.* at 118a. Dr. Cooke began seeing Claimant in September 2017, following a right knee injury he sustained from slipping on stairs. *Id.* At that time, Dr. Cooke ordered a magnetic resonance image (MRI), which showed DJD of the right knee with some bone edema in the medial compartment, and an x-ray, which showed severe medial compartment DJD. *Id.* Dr. Cooke noted Claimant had a right knee arthroscopy 25 years before, and by slipping, he aggravated a pre-existing condition. *Id.* He treated Claimant with a cortisone injection to provide pain relief. *Id.*

Dr. Cooke reported he next saw Claimant in September 2021, four months after the May 2021 work incident. *Id.* Dr. Cooke noted Claimant re-injured his knee while lifting an object at work, which caused aggravation of his pre-existing right knee DJD. *Id.* Dr. Cooke offered Claimant another cortisone injection, but Claimant declined, instead opting to proceed with a total knee replacement surgery. *Id.* Because of Claimant's weight, Dr. Cooke postponed Claimant's surgery. *Id.* After Claimant lost the required amount of weight, Dr. Cooke performed the right total

knee replacement on July 20, 2022. *Id.* Dr. Cooke indicated "with a reasonable degree of medical certainty that since [Claimant's] injury occurred at work, . . . it is a work related injury." *Id.* He explained: "[Claimant] had known DJD in his right knee which [Dr. Cooke] treated in the past successfully. His exam and x-rays were consistent with this . . . being the reason for his pain." *Id.* Dr. Cooke indicated "with [a] reasonable degree of medical certainty that [Claimant's injury] was an aggravation of a pre-existing condition." *Id.*

Employer offered the deposition testimony of Dr. Mendez, a board-certified orthopedic surgeon. *Id.* at 60a. Dr. Mendez performed an independent medical evaluation (IME) of Claimant on November 8, 2022. *Id.* at 66a. Dr. Mendez obtained Claimant's history regarding the 2021 knee injury, and his previous right knee injuries and treatment, and he reviewed Claimant's medical records, including records from Claimant's primary care provider, Dr. Miller. *Id.* at 77a-82a. Dr. Mendez conducted a physical examination of Claimant and found Claimant's exam to be benign. *Id.* at 76a. Dr. Mendez indicated Claimant was able to walk with normal gait and stride without spasticity or limp, he had a normal lower back exam, he had full range of motion, and he had no pain, spasms, or deformities. *Id.* at 74a. Regarding his right knee, Dr. Mendez noted "[t]he objective signs with regard to the right knee was that he had slight limitation of motion with regard to his right knee compared to his left knee and the presence of an incision which was well healed. Otherwise[,] the right knee and right lower extremity [were] symmetrical to his left." *Id.* at 76a. When asked whether the records he reviewed were consistent with the history Claimant provided, Dr. Mendez provided:

> Somewhat inconsistent with that history is this record that I brought up from Dr. Miller from 7/27/2020. If you listen to [Claimant], he makes it sound like his knee was okay, it really wasn't bothering him that

4

much, he wasn't even contemplating any kind of a knee replacement. He was going on about his business and really the knee wasn't that much of an issue. That is the picture that he painted to me, the history that he gave me.

This record from Dr. Miller is a little different picture to me, it paints a little different picture than that to me, in that he says that his main complaint is his right knee and that he knows he will have to get it replaced at some point. But he wants to hold out another year with his job however. He's unable to do any type of exercise due to his knee issues. He has had cortisone injection in the past with some mild benefit.

The significance of that record to me is that the knee was an issue. It was obviously a significant issue and it actually was his main complaint at that time. He understood, based on that record, that there was a plan for a knee replacement in the future and it sounds like in the not too distant future. And it sounds like he would be contemplating it, if he could hold out for another year.

*Id.* at 86a.

Regarding the May 2021 work incident, Dr. Mendez offered his opinion "to a reasonable degree of medical certainty that . . . [Claimant] sustained a lumbar sprain and strain" and opined that "there is no evidence to support that [Claimant] sustained a right-knee injury on [May 21, 2021]." *Id.* at 89a-90a. Dr. Mendez explained because Claimant had "severe pre-existing osteoarthritis as far back as at least 2017[,]" he had chronic knee problems to some degree since that time. *Id.* at 90a. Dr. Mendez testified:

I think, in my opinion, at least to a reasonable degree of medical certainty, this gentleman had a chronic problem with his knee and he ended up having surgery for his knee, which his appropriate in August of 2022 or July of 2022. That surgery was reasonable and appropriate and it was reasonable and appropriate on the basis of a chronic degenerative condition of his knee which was severe and had been severe for some time.

5

There is nothing that supports that, in any way, that degenerative condition was aggravated by way of any x-rays or any change in his ability to function at work or anything that I can put my finger on and say, this was an aggravation and therefore this represents more than just his arthritic problem for which he had the surgery.

*Id.* at 92a-93a.

Employer also offered Dr. Miller's progress notes for July 27, 2020, through April 5, 2021. *Id.* at 106a-17a. According to Dr. Miller's notes, Claimant appeared on July 27, 2020, and was stable overall, but complained of his right knee, which he acknowledged would need replaced at some point. *Id.* at 106a. Dr. Miller noted Claimant wanted to delay surgery for another year because of his job. *Id.* Claimant also visited Dr. Miller on December 4, 2020, and Dr. Miller acknowledged Claimant was "doing okay overall," but he "continue[d] to have significant pain in his right knee and ha[d] plans for surgery [the following] year when he [could] retire." *Id.* at 109a. On April 5, 2021, Dr. Miller saw Claimant and again observed Claimant was "doing well overall except for his right knee." *Id.* at 112a. Dr. Miller noted Claimant knew he would need surgery and a knee replacement in the future. *Id.*

Following the hearings, the WCJ found Claimant established an entitlement to benefits and granted Claimant's Claim Petition. *Id.* at 136a. Specifically, the WCJ found Claimant credible regarding his history of right knee DJD, and the aggravation of his right knee DJD during the May 2021 work incident. *Id.* at 133a. Considering the medical evidence, the WCJ found Dr. Cooke more persuasive than Dr. Mendez, specifically with regard to Claimant's aggravation of his underlying right knee condition. *Id.* at 134a. The WCJ concluded Claimant sustained a lumbar sprain and strain, and aggravation of his right knee DJD, and that he was entitled to benefits from July 20, 2022, through October 2, 2022. *Id.* at 134a-35a.

6

Employer appealed the WCJ's Decision to the Board, and the Board affirmed the WCJ in its Order. Employer now seeks review in this Court.

On appeal, Employer argues (1) the Board erred by accepting credibility determinations of the WCJ as to Claimant's testimony where the testimony is directly contradicted by other credible evidence of record, and (2) the Board erred by finding the WCJ's credibility determination regarding the medical witnesses constituted a reasoned decision as required under Section 422(a) of the Act. Employer's Br. at 5. In response, Claimant contends the Board's Order affirming the WCJ's credibility determinations was well reasoned and based upon substantial evidence. Claimant's Br. at 1.

## DISCUSSION

This Court reviews workers' compensation orders for violations of a party's constitutional rights, violations of agency practice and procedure, and other errors of law. 2 Pa.C.S. § 704. We also review whether substantial evidence supports the findings of fact necessary to sustain the Board's Order. *Id.*

First, Employer argues the Board erred by failing to review the WCJ's credibility determinations as to Claimant's testimony. Employer's Br. at 9. Employer alleges Claimant's testimony is directly contradicted by other credible evidence of record. *Id.* Specifically, Employer contends

> the credible evidence of record establishes that Claimant was seen [3] times in the [10] months leading up to May 21, 2021, for severe right knee pain, and in each and every visit there was a discussion regarding the need for a total knee replacement and the Claimant's intent to undergo the surgery in the very near future.
>
> Notwithstanding the above, the [WCJ] found the testimony of the Claimant credible that the incident on May 21, 2021, aggravated his underlying degenerative condition in his right knee. While the [WCJ] acknowledged the information contained in Dr. Miller's medical

7

records he found: "Nevertheless, Claimant presented his testimony during both hearings in a straightforward fashion; acknowledging during direct and cross-examination that he had right knee problems prior to his May[] 2021 work incident[,] but that [he] continued to work his full job despite the problems." []R.R. [at] 133a-134a[].

. . . .

Here, it is clear that the testimony of the Claimant relevant to a consideration of the issue of causation, is directly contradicted by other credible evidence of record, namely, the records of the Claimant's own primary care provider, which establish that the Claimant's symptoms in his right knee prior to May 21, 2021, were not "dull" and "bearable" but rather were quite severe, so much so that the Claimant sought medical treatment with Dr. Miller on three [] occasions, each time discussing the need for a total knee replacement, with the last occasion occurring a little over a month before the work incident which allegedly aggravated the Claimant's right knee condition.

Employer's Br. at 18-19.

Regarding credibility determinations, the WCJ is the ultimate fact finder in workers' compensation cases and is entitled to weigh the evidence and assess credibility of witnesses. *Montano v. Advance Stores Co., Inc. (Workers' Comp. Appeal Bd.)*, 278 A.3d 969, 978 n.4 (Pa. Cmwlth. 2022) (citation omitted). "The WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned." *A&J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (citation omitted). The WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part. *Id.* (citation omitted). This Court will not disturb a WCJ's findings so long as there is substantial evidence in the record to support those findings. *Berardelli v. Workmen's Comp. Appeal Bd. (Bureau of Pers. State Workmen's Ins. Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a

8

conclusion." *W. Penn Allegheny Health Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (citation omitted). In considering whether a WCJ's findings are supported by substantial evidence, this Court "must consider the evidence as a whole, view the evidence in a light most favorable to the party who prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party." *Verizon Pa. Inc. v. Workers' Comp. Appeal Bd. (Mills)*, 116 A.3d 1157, 1162 n.4 (Pa. Cmwlth. 2015) (citation omitted). Finally, "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (citation omitted).

Here, the WCJ, as fact finder, made the following credibility determination regarding Claimant's testimony:

> Having heard and observed Claimant during two video hearings, this [WCJ] finds Claimant's testimony, on balance, credible. In making this finding this [WCJ] concedes that it is a close call; this insofar as it is clear from Dr. Miller's progress notes that Claimant was experiencing right knee issues and aware that a knee replacement would be in his future for over a year prior to his May 21, 2021, work incident. Nevertheless, Claimant presented his testimony during both hearings in a straightforward fashion; acknowledging during direct and cross-examination that he had right knee problems prior to his May 2021 work incident, but that [he] continued to work his full job despite these problems. And Claimant did describe how his right knee worsened after the May 2021 incident, testifying[:] "The knee from May had just gotten progressively worse and to the point where I'd just be simply walking and doing nothing and the knee would actually feel like it was dislocated. And I'd have to stop and get things popped back into place to continue." (9/12/2022 N.T., p. 32) As even Dr. Mendez noted, Claimant demonstrated a very stoic and hard-working attitude. Indeed, Claimant through both his testimony and his October 2022 return to

9

work demonstrated a willingness to tolerate aches and pains to accomplish his tasks, and a willingness to return to these tasks as soon as possible. Claimant's testimony regarding his May 21, 2021, incident involving both his low back and his right knee, the progressive worsening of his right knee condition after this incident, and his ultimately seeking surgery for his right knee condition due to this worsening is accepted as fact.

R.R. at 133a-34a. The WCJ also addressed the credibility of the medical evidence, explaining:

> Regarding the medical evidence presented, this [WCJ] finds that, while both Dr. Cook[e] and Dr. Mendez presented their information with a reasonable degree of medical certainty, Dr. Cook[e]'s information regarding Claimant's right knee is more persuasive. Again, this [WCJ] is not unmindful of the information contained in Dr. Miller's notes-information highlighted by Dr. Mendez. Nor is this [WCJ] unmindful of Dr. Mendez's efforts to consider all the information available to him for his IME as fully demonstrated by his deposition testimony. Indeed this [WCJ] does find credible and does accept as fact Dr. Mendez's opinion that Claimant suffered a lumbar sprain/strain from which Claimant was fully recovered as of November 8, 2022. Nevertheless, Dr. Cook[e]'s information and opinion that Claimant's May 21, 2021, work event caused an aggravation of his underlying right knee condition is found credible; this in light of the credit he gives to Claimant's reporting- a reporting reflected in Claimant's testimony and accepted by this [WCJ]. Accordingly, Dr. Cook[e]'s information is accepted as fact. To the extent Dr. Mendez's information is inconsistent with Dr. Cook[e]'s, it is not accepted.

*Id.* at 134a.

Here, the WCJ found Claimant and Dr. Cooke credible regarding the aggravation of Claimant's right knee DJD during the May 2021 work incident, and the WCJ identified the basis for these determinations. The WCJ noted Dr. Cooke relied on Claimant's reporting, and Claimant's reporting was consistent with Claimant's testimony, which the WCJ accepted as true after observing Claimant's testimony via video at the hearings. The WCJ acknowledged Claimant conceded to

10

having right knee DJD before the May 2021 work incident but accepted his assertion that his right knee problems worsened afterwards. We note the WCJ, as factfinder, has complete authority over questions of witness credibility and evidentiary weight. *See Verizon*, 116 A.3d at 1162. As addressed above, the WCJ credited Dr. Cooke's opinion that the May 2021 work incident aggravated Claimant's right knee DJD. It is irrelevant that Dr. Mendez testified otherwise because the WCJ was "free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004). The WCJ credited Dr. Cooke's explanation over Dr. Mendez's that the work incident aggravated Claimant's right knee DJD, a determination which was within his exclusive province as fact finder. Because the WCJ's decision to credit Claimant's and Dr. Cooke's testimony was supported by substantial evidence, Employer's first issue lacks merit.

Second, Employer argues the Board erred by concluding the WCJ issued a reasoned decision as required under Section 422(a) of the Act, 77 P.S. § 834. Employer's Br. at 22. Specifically, Employer asserts the WCJ "failed to properly explain his finding that Dr. Cooke was more credible than Dr. Mendez." *Id.* Employer contends the WCJ stated "Dr. Cooke's information regarding Claimant's right knee is the more persuasive," and without additional analysis, discussion, or explanation, this statement fails to meet the reasoned decision requirement of Section 422(a) of the Act. *Id.* at 23. We disagree.

Section 422(a) of the Act provides, in relevant part, all parties in a workers' compensation case are entitled to "a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine

11

why and how a particular result was reached." 77 P.S. § 834. A WCJ's decision is "reasoned" if it "allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). A WCJ need not discuss all evidence in the record to satisfy this standard. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006). Rather, this standard requires the WCJ's decision to be reasoned so that this Court does not have to "imagine" the reasons why a WCJ found one witness more credible than another. *Id.* at 196 (citation omitted). Thus, when "faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence." Section 422(a) of the Act, 77 P.S. § 834.

Moreover, where there is conflicting witness testimony, a WCJ must articulate the objective rationale underlying his credibility determinations. *Id.* Where a WCJ summarizes the witnesses' testimony "and adequately explain[s] his credibility determinations," this requirement is satisfied. *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry)*, 938 A.2d 1150, 1157 (Pa. Cmwlth. 2007). "[W]hile summaries of testimony alone would be insufficient to satisfy the reasoned decision requirement, where a WCJ summarizes testimony and also objectively explains his credibility determinations, the decision will satisfy the requirement." *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012).

Here, in addressing this issue, the Board noted

> the fact that the WCJ chose to grant relief is not a basis for determining that the Decision is not reasoned as the WCJ's prerogative to determine credibility and weight has not been diminished by the amendments to Section 422(a) [of the Act]. . . . As the Decision contains necessary findings of fact and is capable of meaningful appellate review, . . . we

12

reject any contention that it is not reasoned. Section 422(a) [of the Act] does not permit a party to second guess the WCJ's reasons for credibility determinations.

*Id.* at 146a-47a. We agree with the Board. Claimant testified via video before the WCJ about his work injury, his symptoms, and his history of DJD in his right knee. He testified that while he had a history of DJD in his right knee, his right knee problems were aggravated by the May 2021 work incident. The WCJ had two opportunities to assess Claimant's demeanor and found him credible, and "a WCJ's observation of a witness's demeanor alone is sufficient to satisfy the reasoned decision requirement." *Amandeo*, 37 A.3d at 77. Furthermore, regarding the medical experts, the WCJ identified the evidence he accepted, the evidence he rejected, and his reasons therefor. The WCJ's explanations for his credibility determinations do not leave this Court to imagine "why the WCJ believed one witness over another." *Dorsey*, 893 A.2d at 196. Our appellate review has not been impeded, and we do not need further explanation or clarification to reach our decision. Thus, the WCJ's Decision satisfies the reasoned decision requirement of Section 422(a) of the Act. That Employer does not agree with the WCJ's credibility determinations does not mean the WCJ's Decision was not a reasoned one. Therefore, the Board did not err.

## CONCLUSION

Substantial evidence in the record supports the WCJ's findings, and we discern no error in the Board's acceptance of the WCJ's credibility determinations. Further, the WCJ adequately articulated the basis for his credibility determinations, and we agree with the Board that the WCJ's Decision was reasoned under Section 422(a) of the Act. Accordingly, the Board's Order is affirmed.

_____
STACY WALLACE, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lebanon Transit,              :
           Petitioner   :
                          :
        v.              : No. 141 C.D. 2024
                          :
Philip Schaeffer (Workers'   :
Compensation Appeal Board),   :
          Respondent :

# **O R D E R**

**AND NOW**, this 7th day of April 2025, the Workers' Compensation Appeal Board's January 24, 2024 order is **AFFIRMED**.

 

_____
STACY WALLACE, Judge