# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dessalont Hawkins,      :
     Petitioner    :
             :
  v.         :
             :
CJ's Tire and Auto, Inc. and The  :
Uninsured Employers Guaranty Fund :
(Workers' Compensation Appeal  :
Board),         : No. 248 C.D. 2022
     Respondents  : Submitted: March 10, 2023

BEFORE: HONORABLE CHRISTINE FIZZANO CANNON, Judge
    HONORABLE ELLEN CEISLER, Judge
    HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON   FILED: August 21, 2023

    Dessalont Hawkins (Claimant) petitions for review of the February 22, 2022 opinion and order of the Workers' Compensation Appeal Board (Board) affirming the decision of workers' compensation judge Geoffrey Lawrence (WCJ Lawrence) denying Claimant's reinstatement petition, granting the Uninsured Employers Guaranty Fund's (UEGF) termination petition, and modifying Claimant's average weekly wage. Upon review, we affirm.

# I. Background

Claimant was involved in a motor vehicle accident on January 2, 2017, his first full day of work as a tow truck driver for CJ's Tire and Auto, Inc. (Employer).[1]  *See* Reproduced Record (R.R.) at 64a.  Claimant was not wearing his seatbelt and was thrown around the cab of the truck as a result of the collision.  *Id.* at 41a.  The accident occurred approximately half an hour into Claimant's workday, while he was responding to the second call of the day.  *Id.* at 64a, 243a & 257a.

Claimant filed a claim petition against Employer alleging that he sustained injuries to his lower back, left hip and left shoulder as result of the accident.  R.R. at 5a.  Claimant also filed a petition for penalties, alleging that Employer violated the Workers' Compensation Act (Act)[2] by failing to issue necessary Bureau documents under the Act within 21 days of Claimant's injury. *Id.* at 442a.  Claimant later filed a claim petition naming both "Uninsured Employer" and the UEGF as defendants.  *Id.* at 13a-14a.[3]

In August 2017, workers' compensation judge Scott Olin (WCJ Olin) held a hearing, during which Claimant provided the following testimony.  *See* R.R. at 21a.  Claimant was informed he would be paid per call.  *Id.* at 32a-33a.  Claimant

---

[1] Claimant testified he worked under the observation of a fellow employee for two days prior to the work accident and that January 2, 2017 was his "first full day by [himself] as a driver" for Employer.  Reproduced Record (R.R.) at 64a.  Claimant referred to this process of working under observation as "trailing" and indicated that "all tow companies" engage in this practice "to see what [new hires] can do," regardless of their level of experience.  *Id.*

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[3] The claim petition indicated that employees were to file this particular petition "if they [were] seeking an award against their employer and the [UEGF] because their employer did not maintain workers' compensation insurance coverage and was not approved as a self-insurer at the time of the injury."  R.R. at 13a.

maintained that Employer did not provide a set schedule and that the number of hours he was expected to work per week was not discussed at the time of hiring. *Id.* Employer's office manager relayed to employees the start time and end time for their shifts. *Id.* at 35a-36a. Claimant anticipated working 12-15 hours per day for Employer, explaining that tow truck drivers "work off calls, so we're out there a little longer." *Id.* at 32a-33a. Claimant acknowledged that his daily earning potential as a tow truck driver "fluctuate[d]," noting, for instance, that a day involving primarily roadside assistance would yield roughly $90 to $100. *Id.* at 63a. Claimant anticipated that the nature of the call would dictate the amount earned for the call, noting that tow truck drivers typically earn $8 responding to a request for a jump start and $15 for performing a tire change. *Id.* at 33a-34a. Claimant asserted that he was not compensated for the limited work he performed directly for Employer. *Id.* at 64a.

In October 2018, WCJ Olin held another hearing, at which Claimant and Jamal Coleman (Coleman), Employer's owner, testified. *See* R.R. at 240a & 243a. Claimant testified, in relevant part, that he had 16 years' experience working as a tow truck driver and asserted that he was a hustler. *Id.* at 257a.

Coleman provided the following testimony. Employees received $16 per call, and each call generally took around one hour to complete. R.R. at 245a-46a. Coleman explained that he could pay employees "$16 per call because [his company provides] roadside assistance." *Id.* at 245a. For calls of longer duration, employees might receive $16 per hour beyond the first hour. *Id.* at 246a. Employees who were "good hustlers" and were able to complete 10 to 12 calls per day could earn $700 to $900 per week. *Id.* at 247a. Employees were expected to respond to at least six or seven calls per day. *Id.* At the time of the accident, Coleman had not

yet provided a schedule to Claimant. *Id.* at 248a. Claimant did not complete the tow following the accident, and Coleman did not believe that Claimant was paid for the call. *Id.* at 249a. Coleman had "a few" hustlers, but insisted that "[t]here[ was] no possible way [he] could live paying each employee $800 a week." *Id.* at 245a & 252a.

By decision rendered March 19, 2019, WCJ Olin granted the claim petitions and denied the penalty petition. R.R. at 520a; *see also id.* at 279a & 287a. WCJ Olin found that on January 2, 2017, as a result of a motor vehicle accident, Claimant sustained work-related injuries in the form of cervical strain/sprain, trapezial myofasciitis, left rotator cuff tendinopathy and lumbar strain/sprain with radiculopathy. *Id.* at 520a. WCJ Olin determined that Claimant had a pre-injury average weekly wage of $800, yielding a compensation rate of $533.33 per week. *Id.* Further, WCJ Olin found that on July 15, 2017, for reasons other than his work-related disability, Claimant left a light-duty position paying $325 per week. R.R. at 520a-21a.[4] Accordingly, WCJ Olin awarded Claimant temporary total indemnity benefits of $533.33 per week from January 2, 2017 through July 14, 2017 and partial disability benefits of $316.67 per week from July 15, 2017 onwards. *Id.* at 287a & 520a. Moreover, WCJ Olin concluded that UEGF's participation in the litigation barred any claim for penalties. *Id.* at 286a.

In December 2019, UEGF petitioned to terminate Claimant's workers' compensation benefits, alleging that Claimant had fully recovered as of September 13, 2019. R.R. at 520a. In February 2020, Claimant filed a reinstatement petition,

---

[4] In July 2017, Claimant performed light-duty work for Allways Towing. R.R. at 445a.

asserting that his condition had worsened to the point of total disability as of February 4, 2019.[5]  *Id.*

In February 2020, David Vegari, M.D. (Dr. Vegari), a board-certified orthopedic surgeon, provided deposition testimony on behalf of UEGF.  R.R. at 520a.  Dr. Vegari had performed an independent medical examination (IME) of Claimant in September 2019, during which he recorded Claimant's history and complaints, reviewed medical records and performed a physical examination.  *Id.* at 521a.  Claimant complained of neck and back pain, but informed Dr. Vegari that the pain in his hip and shoulder had resolved.  *Id.* at 323a-24a & 521a.  Based on his evaluation, Dr. Vegari opined that Claimant had fully recovered from his work injuries, and that Claimant was capable of performing his pre-injury job without restrictions.  *Id.* at 521a.  Dr. Vegari also stated that (magnetic resonance imaging) MRI studies performed in 2017 of Claimant's neck and lower back showed insignificant degenerative changes.  *Id.*

In April 2020, Gerald Dworkin, D.O. (Dr. Dworkin), a doctor with board certification in the specialties of physical medicine and rehabilitation and interventional pain management, provided telephonic deposition testimony on behalf of Claimant.  R.R. at 355a-56a & 521a.  Dr. Dworkin began treating Claimant in September 2017.  *Id.* at 521a.  Dr. Dworkin examined Claimant on April 15, 2019, at which time he concluded that Claimant's condition had worsened to the point that he was incapable of handling even the light-duty position that he performed in July 2017.  *Id.*  In August 2019, Claimant received a trial implantation of a spinal cord stimulator in the lumbar area.  *Id.*  Claimant experienced 70% improvement in

_____

[5] Claimant states in his appellate brief that "[b]ased on Dr. Dworkin's testimony, [he] is seeking reinstatement as of April 15, 2019," the date of Dr. Dworkin's examination.  Claimant's Br. at 8 n.1.

5

symptoms, and a permanent stimulator was implanted on February 13, 2020. *Id.* Dr. Dworkin concluded, however, during an examination of Claimant in March 2020 that Claimant was unable to work, as he was recovering from the effects of the implantation of the spinal cord stimulator, and that recovery would take at least three to six months. *Id.*

On June 5, 2020, Claimant testified by telephonic deposition that his pain had worsened to the point that he was unable to work in any capacity. R.R. at 522a. He was in constant pain, and his back and left foot were "giving out" on him. *Id.* at 424a & 522a. Claimant has not worked since July 2017. *Id.* at 522a.

By opinion and order mailed July 21, 2020, the Board affirmed in part, reversed in part, and vacated and remanded in part WCJ Olin's March 19, 2019 determination. R.R. at 442a. The Board reversed WCJ Olin's decision that Claimant sustained lumbar radiculopathy as a result of the January 2, 2017 work accident. *Id.* at 447a. Further, the Board vacated WCJ Olin's determination that Claimant's average weekly wage was $800 and remanded the matter for a subsequent determination on that issue. *Id.* at 449a & 452a (citing Section 309(d.2) of the Act, 77 P.S. § 582(d.2).

By decision circulated June 7, 2021, WCJ Lawrence[6] denied Claimant's reinstatement petition, granted UEGF's termination petition and reduced Claimant's average weekly wage from $800 to $500. R.R. at 525a. WCJ Lawrence determined that Claimant's testimony as to his symptoms and disability was not credible, citing Claimant's appearance and demeanor during live testimony conducted via Skype video and "credible medical evidence." *Id.* at 522a. Further, WCJ Lawrence did not

---

[6] The matter was assigned to WCJ Lawrence following WCJ Olin's retirement. R.R. at 520a.

6

credit Dr. Dworkin's testimony that Claimant's condition had worsened by April 2019 to the point that Claimant could not perform the light-duty work assigned to him in July 2017, concluding that Dr. Dworkin failed to provide a "detailed medical explanation" supporting the asserted worsening of Claimant's condition. *Id.* Moreover, WCJ Lawrence concluded that Claimant failed to demonstrate he was incapable of sweeping or dusting offices, highlighting WCJ Olin's finding that Claimant had been assigned and was capable of performing such work roughly two years prior. *Id.*

Moreover, WCJ Lawrence determined that the testimony of Dr. Vegari was credible and convincing and that it was more credible than the conflicting opinions of Dr. Dworkin. R.R. at 522a. WCJ Lawrence emphasized Dr. Vegari's qualifications as a board-certified orthopedic surgeon and found that Dr. Vegari was thorough in examining Claimant, taking his medical history, and reviewing his medical records. *Id.* at 522a-23a.

Accordingly, WCJ Lawrence concluded that Claimant had fully recovered as of September 19, 2019, and terminated Claimant's medical and wage loss benefits as of that date. R.R. at 523a & 525a.

Regarding the question of Claimant's average weekly wage, WCJ Lawrence found that "[C]laimant's testimony allowed that his wages as a tow truck driver could range between $100.00 and $200.00 per day," and concluded that $100 per day was a "reasonable estimate" in light of the limited duration of his employment. R.R. at 523a. WCJ Lawrence, therefore, fixed Claimant's pre-injury average weekly wage at $500 per week. *Id.*

Claimant appealed, and the Board affirmed. R.R. at 542a. The Board determined that the testimony of Dr. Vegari constituted substantial, competent

evidence supporting the denial of Claimant's reinstatement petition and the grant of UEGF's termination petition. *Id.* at 539a-40a. The Board rejected Claimant's contention that Dr. Vegari's purported failure to accept WCJ Olin's March 2019 determination that Claimant had not fully recovered from his work injuries rendered Dr. Vegari's testimony incompetent; the Board reasoned that Dr. Vegari "acknowledged the work injuries as defined by WCJ Olin and opined that the processes and residuals connected thereto were not present at the time of his evaluation." *Id.* at 540a. Further, the Board concluded that Claimant's own testimony regarding his wages and work schedule supported an average weekly wage of $500. *Id.* at 540a-41a.

## II. Issues

Before this Court,[7] Claimant argues that the Board erred in affirming WCJ Lawrence's grant of UEGF's termination petition, because Dr. Vegari's medical "opinion is incompetent as a matter of law as it is contradictory to established facts of record." Claimant's Br. at 14-15. Specifically, Claimant asserts that Dr. Vegari's opinion that Claimant should have recovered within six weeks of his January 2017 work injury contradicts WCJ Olin's finding that Claimant had not yet fully recovered as of March 2019. *Id.* at 14-17 (first citing R.R. at 335a; and then citing *Williams v. Workers' Comp. Appeal Bd. (Hahnemann Univ. Hosp.)*, 834 A.2d 679, 684 (Pa. Cmwlth. 2003)). Claimant also maintains that Dr. Vegari's opinions lack substantial evidentiary support, as he failed to take into account

---

[7] "This Court's review in workers' compensation appeals is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599, 605 n.6 (Pa. Cmwlth. 2018); *see also* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

Claimant's need for a spinal cord stimulator, discounted the MRI findings and disregarded the electromyography studies. *Id.* at 17-18.

Further, Claimant contends that the Board erred in affirming WCJ Lawrence's denial of Claimant's reinstatement petition, as Dr. Dworkin provided a "detailed explanation" that Claimant's condition had worsened to the point that he was totally disabled as of April 15, 2019, such that Claimant met his burden under *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 2 A.3d 548, 551 (Pa. 2010). Claimant's Br. at 20-22 (citing R.R. at 367a-68a & 370a).

Claimant also asserts that the Board erred in affirming WCJ Lawrence's modification of his pre-injury average weekly wage. Claimant's Br. at 22-24. Claimant contends that Coleman's testimony that a "hustler" could earn $700 to $900 per week constitutes the "best evidence" to determine his average weekly wage. *Id.* at 22-23. Thus, Claimant insists the Board should have utilized WCJ Olin's reasonable "compromise" of $800, as it was "right in the middle of Coleman's range," and requests that the Court reinstate this figure. *Id.* at 23-24.[8]

---

[8] Claimant also requests that this Court "re-examine" the Board's reversal of WCJ Olin's finding that Claimant sustained lumbar radiculopathy as a result of the January 2017 work accident. *See* Claimant's Br. at 19 n.3. However, Claimant did not appeal the Board's July 21, 2020 opinion and order; thus, Claimant failed to preserve this argument for appellate review. *See* Section 5571(b) of the Judicial Code, 42 Pa.C.S. § 5571(b) (providing that "an appeal from a tribunal or other government unit to a court . . . must be commenced within 30 days after entry of the order from which the appeal is taken"); Pa.R.A.P. 1512(a)(1) (stating that "[a] petition for review of a quasijudicial order . . . shall be filed with the prothonotary of the appellate court within 30 days after the entry of the order").

UEGF briefed its arguments in opposition to Claimant. However, Employer was precluded from participating in this matter on appeal for failure to file an appellate brief. *See* Cmwlth. Ct. Order, 12/1/22.

## III. Discussion

Claimant contends that the Board erred in affirming the grant of UEGF's termination petition on the basis of Dr. Vegari's legally incompetent testimony.[9] We disagree. According to Claimant, Dr. Vegari's opinion that Claimant should have recovered from his work-related injuries within six weeks of the January 2, 2017 work accident contradicts WCJ Olin's March 19, 2019 determination that Claimant had not yet fully recovered, thus rendering Dr. Vegari's medical testimony legally incompetent under *Williams*. *See* Claimant's Br. at 15-17. "It is well-settled that where an expert's opinion is based upon an assumption which is contrary to the established facts of record, that opinion is worthless." *Williams*, 834 A.2d at 684 (citing *Noverati v. Workmen's Comp. Appeal Bd. (Newtown Squire Inn)*, 686 A.2d 455 (Pa. Cmwlth. 1996)). However, here, neither aspect of Dr. Vegari's dual opinion that Claimant should have recovered within six weeks and that Claimant had fully recovered by September 19, 2019 contradicts WCJ Olin's determination that Claimant was partially disabled as of March 19, 2019. Dr. Vegari did not opine that Claimant *had* fully recovered as of March 19,

___

[9] As our Supreme Court has explained,

> the employer bears the burden of proof in a termination proceeding to establish that the work injury has ceased. In a case where the claimant complains of continued pain, this burden is met when an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. If the WCJ credits this testimony, the termination of benefits is proper.

*Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997) (footnote omitted).

2019, only that he *should* have recovered by that time. Thus, Dr. Vegari's opinion that Claimant should have recovered within six weeks of the January 2, 2017 work accident does not contradict WCJ Olin's determination that Claimant remained partially disabled more than two years after that date. Further, Dr. Vegari opined that Claimant had fully recovered as of the September 19, 2019 IME, well after WCJ Olin issued the March 19, 2019 decision. *See* R.R. at 329a & 338a (opining that Claimant had "fully recovered" from his work-related injuries "[a]t the time of [the] examination"); *see also id.* at 540a (explaining that "Dr. Vegari acknowledged the work injuries as defined by WCJ Olin and opined that the processes and residuals connected thereto were not present *at the time of his evaluation*") (emphasis added). Claimant, therefore, fails to establish that Dr. Vegari's testimony was legally incompetent on the basis that it was contrary to an established fact of record. *See Williams*, 834 A.2d at 685 (deeming legally incompetent an expert's testimony that the claimant could not perform the available position at the time it was offered, where such opinion "contradict[ed] the finding in WCJ Olin's [prior] decision that [the c]laimant could perform the instructor position *at that time*," thus concluding that the opinion was "not competent to support the requisite finding that [the c]laimant could *no longer* perform the [] position").

Moreover, WCJ Lawrence expressly deemed Dr. Vegari's testimony "credible and convincing" and "[did] not find [C]laimant's testimony as to his symptoms and disability related to the work injury credible based on his appearance and demeanor and when he testified live via Skype video[.]" R.R. at 522a. "While this Court can and should consider the competency and sufficiency of evidence presented before a WCJ, the WCJ's assessment of witness credibility is not subject to our review on appeal." *Davis v. Workers' Comp. Appeal Bd. (City of Phila.)*, 753

11

A.2d 905, 909 (Pa. Cmwlth. 2000); *see also Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995) (stating that a WCJ is "free to accept or reject the testimony of any witness, including a medical witness, in whole or in part"); *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008) (holding that a credibility determination will be overturned "only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational").[10]

We also find meritless Claimant's contention that the Board erred in affirming the denial of his reinstatement petition. Claimant maintains that Dr. Dworkin's detailed testimony supports that his condition worsened to the point of total disability as of April 15, 2019, thereby adversely affecting his earning power.[11]

---

[10] Further, Claimant asserts that WCJ Lawrence's finding that "Dr. Vegari's report and testimony establish that he performed a thorough history, record review and examination" and that "[h]is opinions were clear and logical," lacks substantial evidentiary support on the basis that Dr. Vegari testified he spent 10 minutes examining Claimant, when the exam in fact lasted only 2 minutes. *See* Claimant's Br. at 14 (citing R.R. at 323a-30a & 523a). We note, however, that the portion of Dr. Vegari's deposition cited by Claimant contains no such statement. Further, we observe that Claimant's own testimony contains inconsistencies regarding the duration of the independent medical examination (IME). *See* R.R. at 427a (attesting that he was in "[Dr. Vegari's] office maybe two minutes," subsequently asserting that "[he] was in there for maybe a minute, minute and a half tops," insisting "that's no exaggeration"). Moreover, we reiterate that WCJ Lawrence was taxed with credibility determinations and was free to accept or reject any or all of any witness's testimony. *Greenwich Collieries*, 664 A.2d at 706.

[11] We note that contrary to Claimant's assertion, *Bufford* does not govern his burden in seeking reinstatement of total disability benefits under the present circumstances. "Generally, a claimant seeking reinstatement following a modification of benefits must prove that through no fault of his own, his disability is again adversely affected by the work injury, and the disability giving rise to the original claim continues." *Ward v. Workers' Comp. Appeal Bd. (City of Phila.)*, 966 A.2d 1159, 1162 (Pa. Cmwlth. 2009) (footnote omitted) (citing *Pieper v. Ametek-Thermox Instruments, Div.*, 584 A.2d 301 (Pa. 1990)). However, "[a] claimant who seeks to reinstate total disability benefits, *subsequent to a modification to partial disability, based upon job availability* has the burden to prove that the work-related disability increased to the point where he is no longer

12

*See* Claimant's Br. at 20-22 (citing *Bufford*, 2 A.3d at 558; Transcript of Testimony, 4/30/20 at 18-19 & 21, R.R. at 367a-68a & 370a). However, WCJ Lawrence

> [did] not find the testimony of Dr. Dworkin that [C]laimant's condition worsened in April 2019 such that he could no longer perform the sedentary work[12] he did in July 2017 credible. Dr. Dworkin did not give a detailed medical explanation describing a change in [C]laimant's condition which would amount to a worsening. WCJ Olin noted that [C]laimant was given work such as sweeping and dusting offices. WCJ Olin found that the work was within [C]laimant's capability and this WCJ is not convinced that nearly two years later [C]laimant became unable to perform that work.

R.R. at 522a. As noted above, a WCJ's determination regarding the credibility of a medical witness is not subject to review on appeal. *See Davis*, 753 A.2d at 909; *Greenwich Collieries*, 664 A.2d at 706; *Casne*, 962 A.2d at 19. Regardless, "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (quoting *Minicozzi v. Workers' Comp Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005)). Thus,

---

able to perform the job that was previously found to be available." *Mitchell v. Workers' Comp. Appeal Bd. (Devereux Found.)*, 796 A.2d 1015, 1019 (Pa. Cmwlth. 2002) (emphasis added).

[12] The work performed by Claimant in July 2017 involved sweeping, dispatching vehicles and "getting coffee." R.R. at 285a. Elsewhere in the same decision, WCJ Lawrence more accurately referred to this work as "light duty," rather than "sedentary." R.R. at 521a. Confusingly, WCJ Olin stated in his March 19, 2019 decision that the "work duties" performed by Claimant in July 2017, such as "sweeping an office, dispatching vehicles and getting coffee[] appear[ed] sedentary in nature." R.R. at 288a.

13

Claimant cannot rely on Dr. Dworkin's medical testimony to overturn the denial of his reinstatement petition.[13]

Lastly, we agree that $500 is a reasonable estimate of Claimant's pre-injury average weekly wage. "The question of what constitutes an employee's [average weekly wage] is a question of law that is subject to full review by this court." *Lennon ex rel. Lennon v. Workers' Comp. Appeal Bd. (Epps Aviation, Inc.)*, 934 A.2d 153, 155 n.6 (Pa. Cmwlth. 2007). Pursuant to Section 309(d.2) of the Act,

> [i]f the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment.

77 P.S. § 582(d.2). As our Supreme Court has explained,

> subsection (d.2) . . . provides for a prospective calculation of potential earnings. By its terms, (d.2) contemplates persons for whom there is little work history with the employer upon which to calculate the [average weekly wage]. . . . [S]ubsection (d.2) was intended for . . . those

---

[13] We also deem meritless Claimant's assertion that Dr. Vegari's medical opinion lacks substantial evidentiary support on the basis that he failed to take into account Claimant's need for a spinal cord stimulator, discounted the magnetic resonance imaging (MRI) findings and disregarded the electromyography studies. *See* Claimant's Br. at 17-18. Dr. Vegari stated in an addendum to the IME that Claimant's subsequent receipt of a spinal cord stimulator did not alter his initial medical opinion that Claimant was fit to return to full-duty work. R.R. at 300a & 328a. Further, Claimant's blank assertion that Dr. Vegari discounted the findings of the 2017 MRI studies fails to undermine the WCJ's decision to credit Dr. Vegari's 2020 medical deposition testimony. *See Casne*, 962 A.2d at 19. Moreover, Claimant's electromyography (EMG) studies do not constitute substantial evidence subverting Dr. Vegari's medical opinion that Claimant had fully recovered from his work injuries. The EMG studies pertained to WCJ Olin's initial finding that Claimant sustained lumbar radiculopathy, *see* R.R. at 106a & 369a, which the Board reversed, *see* R.R. at 442a & 523a.

14

instances of work injuries to recently-hired employees for whom there was, by definition, no accurate measure of [average weekly wage] other than taking the existing hourly wage and projecting forward on the basis of the hours of work expected under the employment agreement.

*Reifsnyder v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 883 A.2d 537, 546-47 (Pa. 2005). "The question of a claimant's expected number of hours per week is a question of fact for the WCJ . . . ." *Lahr Mech.*, 933 A.2d at 1101 (citing Section 309(d.2) of the Act, 77 P.S. § 582(d.2)).[14]

Here, Employer would have calculated Claimant's pay per call, rather than on an hourly basis. Nevertheless, WCJ Lawrence found on the basis of Claimant's testimony that his potential compensation ranged from $100 to $200 per day. *See* R.R. at 523a. Claimant conceded that his daily earning potential as a tow truck driver "fluctuate[d]," and that a day involving primarily roadside assistance would yield roughly $90 to $100. *Id.* at 63a. Although this testimony presumably references Claimant's experience with previous employers, Coleman's testimony supports a similar range of daily compensation. Coleman testified that the rate of pay was typically $16 per call (potentially $16 per hour for calls of longer duration), and that employees were expected to respond to at least six to seven calls per day. *Id.* at 247a. Although Claimant asserts that Coleman's testimony that a "hustler" could potentially earn $700 to $900 per week supports that he would have earned an

---

[14] We acknowledge that Section 309(d.2) of the Act is not precisely applicable. Although Claimant worked less than 13 calendar weeks for Employer, he had neither an hourly rate of pay nor an agreement with Employer as to the number of hours he was required to work per week. *See* Section 309 of the Act, 77 P.S. § 582(d.2). Nevertheless, latitude for projections is permitted by Section 309(d.2) of the Act, 77 P.S. § 582(d.2). *See Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder, Jr.)*, 834 A.2d 524, 532 (Pa. 2003) (citing Section 309(d.2) of the Act, 77 P.S. § 582(d.2)) (stating that "in the case of recently hired workers, the statute permits a **projection** based upon the number of hours the employee was 'expected' to work").

average weekly wage of $800, Coleman insisted that he could not afford that level of compensation for all employees. *See* Claimant's Br. at 22-24.; R.R. at 245a & 252a. Thus, Coleman's testimony supports a projected average weekly wage of $480 to $560[15] (approximately $100 per day). Due to the unpredictable nature of Claimant's work schedule and the unusually limited duration of his employment, any amount beyond this range would constitute speculation, rather than the "prospective calculation" permitted by Section 309 of the Act. *Reifsnyder*, 883 A.2d at 546. We, therefore, agree with WCJ Lawrence that $500 is a reasonable average weekly wage.

## IV. Conclusion

For the foregoing reasons, we affirm the February 22, 2022 opinion and order of the Board.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[15] These sums were calculated by multiplying $16 by 6 and 7, respectively, to produce projected daily earnings of $96 to $112, and then multiplying the resultant amounts by 5.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dessalont Hawkins,                 :
               Petitioner       :
                           :
        v.                  :
                           :
CJ's Tire and Auto, Inc. and The   :
Uninsured Employers Guaranty Fund  :
(Workers' Compensation Appeal     :
Board),                          :   No. 248 C.D. 2022
             Respondents    :

## O R D E R

AND NOW, this 21st day of August, 2023, the February 22, 2022 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge