Newman & Company, Inc.,       :
           Petitioner    :   No. 1261 C.D. 2022
                      :
      v.             :   Submitted: October 10, 2023
                      :
Mark Warner (Workers'      :
Compensation Appeal Board),  :
          Respondent   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH            FILED: November 30, 2023

        Newman & Company, Inc. (Employer) petitions for review of the October 27, 2022 decision of the Workers' Compensation Appeal Board (Board), which affirmed the Workers' Compensation Judge's (WCJ) April 8, 2022 decision granting Mark Warner's (Claimant) Claim Petition (Petition) and ordering Employer to pay Claimant: (1) temporary total disability (TTD) benefits as of April 23, 2021, and ongoing at the rate of $994.98 per week; (2) ten percent interest on all past due compensation; (3) all reasonable, necessary, and related medical expenses for the work injuries; and (4) Claimant's counsel's litigation costs. Upon careful review, we affirm in part and reverse and remand in part.

## I.  Facts and Procedural History

        On May 14, 2021, Claimant filed the Petition, asserting that on October 28, 2020, he sustained a right leg wound with complications that, he explained,

developed from driving a cab-over truck 12 to 15 hours a day, and required hospitalization. (R.R. at 2a, 14a-15a.) Claimant alleged in the Petition that he gave verbal notice to the safety manager on the same day the injury occurred. *Id.* at 2a. Claimant requested partial disability benefits from October 28, 2020, until April 23, 2021, and total disability benefits ongoing from April 24, 2021. *Id.* at 4a. Employer denied a work-related injury in a Notice of Compensation Denial dated May 27, 2021.

**Claimant's Deposition Testimony**

Claimant testified by deposition that he worked for Employer as a truck driver, driving twelve to fifteen hours per day without getting out of the truck. *Id.* at 14a. He explained that he was seated over the covered engine, which "gave off over 200 degrees of heat during the course of the day." *Id.* at 15a. He explained that whenever he drove, his right leg was up against the heat of the engine all day. *Id.* at 20a. Claimant explained that at the end of October he started noticing pain and a "little knot" on the outside of the middle of his calf. *Id.* at 18a. On October 28, 2020, Claimant was not feeling "quite [himself]" because of excruciating pain in his leg, however he finished his shift. *Id.* at 16a. He showed his leg wound to safety manager, John Foerst (Foerst). Claimant did not tell Foerst that his leg wound was work related. *Id.* at 37a. Foerst sent Claimant to Employer's panel physician, Dr. Neill Mallis, who prescribed an antibiotic and released him back to work. *Id.* at 18a-19a. The panel physician did not relate Claimant's wounds to work conditions. Claimant continued to work. *Id.* at 18a. About one month later, a "second bump" formed on the right leg below his knee. *Id.* at 21a. At the end of April 2021, he was completely unable to walk on his right leg, and he could not climb in and out of the truck. *Id.* at 22a. He had a large open wound from his ankle to his mid-calf in the shape of the letter "C" and sharp pain in his right leg. *Id.* at 23a-25a. On April 28, 2021, Claimant went to the

emergency room (ER), reported that he had wounds on his leg, and was hospitalized for four days with a sepsis infection. *Id.* at 24a. Claimant's last day of work for Employer was April 23, 2021. *Id.* at 28a. On April 1, 2021, he started working for Health Care Builders, a healthcare organization through which he provided home care to his wife, eight hours per week. *Id.* at 31a-32a. He explained that there was a short period of time between April 1, 2021 and April 23, 2021, during which he worked for Employer full time and Health Care Builders part time. *Id.* at 32a.

Claimant testified that his wounds are still open, and that he still experiences excruciating pain during the day and at night. *Id.* at 30a. He is currently treating with Dr. Robert Sing who performs wound care and laser therapy to prevent blood clots. *Id.* at 27a-28a. Claimant asserted that he is no longer able to drive a truck because he has to both elevate and exercise his leg, which is not conducive to non-stop driving. *Id.* at 44a.

**Dr. Sing's Deposition Testimony**

Claimant presented the deposition testimony of his treating physician, Dr. Sing, board certified in family medicine, sports medicine, and emergency medicine. Dr. Sing first saw Claimant on May 13, 2021. He had two large ulcerations on his right lower leg, with drainage. *Id.* at 79a. He opined, based on his review of the ER medical records, that Claimant was a diabetic. *Id.* at 83a. Dr. Sing also noted that the infectious disease doctor at the hospital, Dr. Fumberg, documented that Claimant noted he was a truck driver. He also noted that in October 2020, Claimant was driving the truck and the heat of the truck on his leg eventually caused the bumps on his leg to breakdown and form large ulcerations that continued to progress over the following six months. Dr. Sing explained that diabetic patients have a lack of sensation on the skin and lack of circulation in their extremities. *Id.* at 85a. He opined that when Claimant was

3

burned, he did not feel the pain when it was occurring, which is called peripheral diabetic neuropathy. *Id.* Because there was no blood supply, the wounds became septic. *Id.* at 86a. Dr. Sing opined that the wounds and stasis ulceration were caused by the engine burns sustained on October 28, 2020. *Id.* at 93a-95a. Dr. Sing testified that it is not a coincidence that these wounds were on his right lower extremity exactly at the site on the side of his leg that was next to the hot engine of the truck. The burn on the top of Claimant's leg started a cascade of events that could not heal because of an underlying diabetic condition. He stated that Claimant was not fully recovered from the work injuries and cannot return to his pre-injury position. *Id.* at 95a.

### John Foerst Deposition Testimony

Employer presented the deposition testimony of the corporate safety director, Foerst, who testified that on October 28, 2020, he sent Claimant for a fitness-for-duty evaluation. *Id.* at 132a. Although an infection or sore was found behind Claimant's right leg during the evaluation, Claimant was cleared to continue driving full time without restrictions. *Id.* Claimant showed Foerst his wound but he did not indicate that it was work related. *Id.* at 133a. Foerst took the surface temperature of the cab that covers the engine of Claimant's truck sometime after the litigation began. *Id.* After the truck ran continuously for probably over ten hours, the temperature registered at 100.58 degrees Fahrenheit. *Id.* at 140a-41a. Foerst opined that Claimant's outside of right knee could have possibly leaned against the engine compartment, but not the back of his knee. *Id.*

Claimant stopped working around April 23, 2021. *Id.* On May 4, 2021, Claimant called Foerst to let him know that he was in the hospital for an infected leg wound but did not indicate that it was work related. *Id.* Foerst first learned about Claimant's workers' compensation claim when he received the Petition in the mail. *Id.*

4

135a-36a. On September 28, 2021, Foerst sent Claimant a letter offering him his pre-injury job. *Id.* at 139a. Claimant did not respond. *Id.* At the time of the deposition, the job was available, and Claimant remained an employee of Employer. *Id.* at 138a-39a.

**Steven Boc Deposition Testimony**

Employer also presented the deposition testimony of Steven Boc, M.D., (Dr. Boc), a podiatrist, board certified in foot and ankle surgery and podiatric medicine. *Id.* Dr. Boc evaluated Claimant on September 15, 2021. *Id.* at 185a. After reviewing medical records and examining Claimant, Dr. Boc believed Claimant had a venous stasis ulcer on his right lower leg. *Id.* at 196a. He opined that the stasis ulcer on Claimant's calf was not caused by hot temperatures or a burn, but caused by chronic lymphedema, morbid obesity, diabetes, and persistent swelling in the lower extremity. *Id.* He stated that Claimant did not sustain a work-related burn injury. *Id.* at 197a. He testified that laser treatment is not "providing any further therapeutic care for the ulcer site at present." *Id.* at 201a. He opined that Claimant could return to work. *Id.* at 200a.

Employer submitted a video showing temperature readings taken from within Claimant's assigned work truck. *Id.*

**Claimant's Live Testimony**

Claimant testified live before the WCJ on January 11, 2022, to provide the WCJ with an update of his condition. He testified that his wound is still open, but it is healing, and that he still treats with Dr. Sing twice a week. (Transcript of Proceedings, 1/11/22, at 7.) He testified that he is no longer working for Health Care Builders and that he stopped working there in September 2021. *Id.* at 8. He testified as of September 2021, he has had no source of income. *Id.* He testified that there was a temperature gauge on the dashboard that read the actual temperature of the engine, and back when

5

he was diving, the temperature was between 180 and 200 degrees. *Id.* at 9-10. He testified that his right calf was against the engine compartment of the truck he was driving between 12 to 15 hours a day. *Id.* at 10.

**WCJ's Findings and Decision**

On April 8, 2022, the WCJ issued a Decision and Order granting the Petition. The WCJ credited Foerst's testimony that he was not aware of the work-related nature of Claimant's injury until receipt of the Petition. The WCJ credited Claimant's testimony about the heat conditions against his right leg while driving for Employer, his ongoing symptoms related to the burn injury he sustained while working rendering him disabled as of April 23, 2021, and his inability to work. The WCJ noted that that area of his leg was close to the heat from the engine. The WCJ concluded that Claimant was driving the truck for Employer, and there was a temperature gauge on the dashboard that read the actual temperature of the engine as between 180 and 200 degrees. Claimant's right lower calf was burned from being up against the engine compartment of the truck that he drove for Employer. On a given day, his leg was against the engine compartment up to 15 hours per day.

The WCJ also credited Dr. Sing's opinion that Claimant sustained stasis ulceration status post burn wounds of the right lower extremity as a result of his work injury, and that he has not fully recovered so as to be able to return to work. Finally, the WCJ stated that Dr. Boc provided a thorough account for his medical determination; however, the weight of the evidence supports Dr. Sing's findings and medical records reviewed by both physicians. (WCJ Decision, 4/8/22, at 12.)

The WCJ concluded that "Claimant satisfied his burden of proving by credible competent evidence that he sustained a work-related injury in the course and scope of his employment on October 28, 2020, in the form of stasis ulceration status

6

post burn wounds of the right lower extremity." *Id.* at 13. Relevant to our analysis here, the WCJ made the following finding of fact with regard to Claimant's temporary concurrent employment with Health Care Builders:

> s. Claimant was concurrently employed by [Health] Care Builders, which is healthcare work for his wife. He started working for [it] on April 1, 2021. There was a period of time where he was working for [] Employer full[]time and for [Health] Care Builders part time. The job involved assisting his wife because she has Lupus and essentially independent but requires some care.
>
> t. Claimant was working for [Health] Care Builders and Employer at the same time, he was paid $11.00 per hour and worked 8 hours per week for [Health] Care Builders. Since he stopped working for Employer, he now works 40 hours per week for [Health] Care Builders. Claimant explained that the reason he is currently capable of working for [Health] Care Builders but not [] Employer is because his wife is homebound, and she does not work. All he has to do is sit with her and monitor her. It is not overworking him to help her with her needs.

(Finding of Fact (FOF) No. 3(s) and (t)) (citations omitted).

> The WCJ also made the following finding regarding notice to Employer:
>
> 8. This [WCJ] finds Claimant's testimony about his ongoing symptoms related to the burn injury he sustained while working, rendering him disabled as of April 23, 2021, as well as his inability to return to work, to be credible . . . . **[C]laimant's first diagnosis of the work-related nature of this injury appears to be April or May 2021**. [C]laimant provided notice to [E]mployer by [the P]etition on May 14, 2021.

(WCJ Decision, 4/8/22, at 12) (emphasis added).

7

The WCJ directed Employer to pay total disability benefits as of April 23, 2021, and ongoing, which he deemed entirely attributable to the work injury at the rate of $994.98 per week, as well as work-related medical benefits. *Id.* at 14.

Employer appealed to the Board, arguing that the Petition should have been denied and dismissed because Claimant failed to prove that he gave timely notice of his alleged work-related injury within 120 days from October 28, 2020, *i.e.*, when he first noticed the wound, pursuant to Section 311 of the Workers' Compensation Act (Act).[1] Employer further argued that the WCJ's Decision was not supported by substantial competent evidence. Employer alternatively argued that should the Board affirm the award of benefits, Employer is entitled to an offset from the wages Claimant earned from his employment with Health Care Builders.

> In [FOF] 3(s), the WCJ erroneously refers to Claimant as "concurrently employed by [Health] Care Builders." The WCJ appears to have intended this in the colloquial sense rather than the legal sense, as Claimant's earnings from [Health] Care Builders are not included in the average weekly wage calculation. No allegation is made that Claimant was concurrently employed at the time of injury. Claimant did not start working for [Health] Care Builders until April 2021, months after his alleged work injury.

---

[1] Act of June 2, 1915, P.L. 736, § 311, *as amended*, 77 P.S. § 631. Section 311 provides:

> Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.

77 P.S. § 631. This section also sets forth a discovery rule for instances in which the nature of the injury or its causal relation to employment is not readily apparent. *See id.* Pursuant to such provision, the notice period does not commence until the employee "knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment." *Id.*

**However, the WCJ did not make any factual findings regarding Claimant's actual earnings from [Health] Care Builders so that Employer may properly offset any benefits that may be due and owing**.

(On-Line Appeal, 4/13/2022, at 3) (emphasis added).

Finally, Employer argued that litigation costs were not recoverable and were not payable.

On October 27, 2022, the Board affirmed the WCJ's Decision. After review of the testimony, the Board determined the WCJ's findings concerning the cause of Claimant's injury and timely notice of injury to Employer were supported by substantial evidence. The Board acknowledged that the WCJ had not expressly stated the standard applied regarding timely notice of injury, but nevertheless concluded that the discovery rule applies to Claimant's injury. (Board Decision, 10/27/22, at 6.) The Board agreed that the 120-day notice provision of Section 311 of the Act, in cases involving other than occupational diseases, began to run in this case when Claimant knew or should have known that he was injured, and that the injury was work related, regardless of whether the injured worker is disabled by the injury. *Id.* The Board observed that, per the WCJ's findings, Claimant did not know of the work-relatedness of his October 28, 2020 injury until he met with Dr. Sing on May 13, 2021. The Board found that the notice was timely because Claimant filed the Petition (thus giving Employer notice of injury) on May 14, 2021. *Id.* The Board further explained, relying on this Court's decision in *Tapco Inc. v. Unemployment Compensation Board of Review*, 650 A.2d 1106, 1109 (Pa. Cmwlth. 1994):

> Although [Employer] counters that Claimant should have known about his injury and its purported relationship to his employment in October 2020, the fact that one party to a proceeding may view testimony differently is not grounds for

9

reversal if substantial evidence supports the lower tribunal's findings.

(Board Decision, 10/27/22, at 7.)

Next, the Board determined that the WCJ did not err in failing to offset the total disability benefits Employer was directed to pay ongoing from April 23, 2021, with the wages Claimant earned from Health Care Builders beginning on April 1, 2021.

> [Employer] next argues that, although the WCJ concludes that Claimant was "concurrently employed by [Health] Care Builders," the WCJ did not include Claimant's earnings from [Health] Care Builders in the average weekly wage calculation. By way of background, no allegation was made that Claimant was concurrently employed at the time he was injured. [Employer] concedes that "Claimant did not start working for [Health] Care Builders until April 2021, months after his alleged work injury." The use of the word "concurrent" in the Decision is found in the WCJ's summary of Claimant's testimony. Claimant had testified by deposition as to his employment with [Health] Care Builders after having been asked "did you have a concurrent employer?" Claimant then testified that he started working for [Health] Care Builders on April 1, 2021. Claimant testified that he worked for [Employer] full[]time and [Health] Care Builders part[]time at some point. Claimant later testified live that he stopped working for [Health] Care Builders in September. This testimony was elicited in response to counsel saying "you talked about having concurrent employment with [Health] Care Builders. Are you still working with Care Builders?" Claimant confirmed that he was not working for [Health] Care Builders on October 28, 2020.

> Contrary to the way the term was used during Claimant's testimony, concurrent in the term "concurrent employer" under the Act means "at the time" of the injury. *See Freeman v.* [*Workmen's Compensation Appeal Board*] *(C.J. Langenfelder & Son)*, 527 A.2d 1100 (Pa. Cmwlth. 1987).

10

"Indeed, it is well accepted that an employee must be concurrently employed at the time of the injury for the employee to receive workmen's compensation benefits calculated on the basis of both employments." *Id.* at 1102. Section 309(e) provides, in relevant part, that "[w]here the employe is working under concurrent contracts with two or more employers, his wages from all such employers shall be considered as if earned from the employer liable for compensation." *Kurpiewski v.* [*Workers' Compensation Appeal Board*] *(Caretti, Inc.)*, 202 A.3d 870, 887 (Pa. Cmwlth. 2019) (citing 77 P.S. § 582(e)). "However, for a claimant's employment with a second employer to qualify as 'concurrent employment,' the claimant had to have been working for both employers "**at the time of the [work] injury.**" *Id.* (*citing Freeman*[, 527 A.2d] at 1101-02) (emphasis in original). Because the instant Claimant testified that he worked only for [Employer] on October 28, 2020, the WCJ did not err in failing to offset the total disability benefits [Employer] was directed to pay ongoing from April 23, 2021 with the wages Claimant earned from [Health] Care Builders beginning on April 1, 2021. *See id.*

(Board Decision, 10/27/22, at 8-10.)

Finally, because Claimant prevailed in part, the Board did not vacate the award of litigation costs or the approval of the counsel fee agreement between Claimant and his counsel. *Id.* This appeal[2] by Employer followed.

## II. Issues

Employer raises the following issues: (1) whether the WCJ erred by not denying and dismissing the Petition because Claimant failed to prove that he gave

---

[2] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, and whether constitutional rights were violated. *Department of Transportation v. Workers' Compensation Appeal Board (Clippinger)*, 38 A.3d 1037 (Pa. Cmwlth. 2011).

11

Employer notice of his alleged work-related injury within 120 days of October 28, 2020; (2) whether the WCJ's Decision was supported by substantial competent evidence; and (3) whether the WCJ erred by failing to allow Employer to take an offset for Claimant's post-injury earnings from Health Care Builders.

### III.  Discussion

### A. Notice

Employer argues that the Claimant's Claim Petition should have been denied because the notice Claimant gave of his injury was not timely under Section 311 of the Act.  Employer argues that both the WCJ and the Board erroneously used the date Dr. Sing told Claimant of the relationship between the heat from the truck engine and his injuries to "start the clock" on the deadline to provide notice.

Timeliness of a claimant's notice to his employer is mandatory for recovery of workers' compensation benefits.  *Duquesne Light Co. v. Workmen's Compensation Appeal Board (Kraft)*, 416 A.2d 651 (Pa. Cmwlth. 1980).  Section 311 of the Act sets forth the time limitation on notice of injury to the employer and when the time for giving notice begins to run.  It states, in relevant part:

> Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf . . . shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed . . . .

77 P.S. § 631.

The discovery rule under Section 311 permits that "employees who suffer an injury that is not readily and immediately ascertainable have the same rights under the Act as those employees who sustain an injury . . . as long as they proceed with

12

reasonable diligence." *Sell v. Workers' Compensation Appeal Board (LNP Engineering)*, 771 A.2d 1246, 1251 (Pa. 2001). The standard of reasonable diligence requires "a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case." *Id.* (quoting *Cochran v. GAF Corp.*, 666 A.2d 245, 249 (Pa. 1995)) (internal quotations omitted). While reasonable diligence is an objective standard, "it is sufficiently flexible to take into account the different capacities people have to deal with the circumstances they confront." *Id.* In order to trigger the running of the 120-day period for notice, a claimant must have: (1) knowledge or constructive knowledge, (2) of a disability which, (3) exists, (4) results from an occupational disease or injury, and (5) has a possible relationship to the employment. *Allegheny Ludlum Corp. v. Workers' Compensation Appeal Board (Holmes)*, 998 A.2d 1030, 1034 (Pa. Cmwlth. 2010).

The claimant bears the burden of establishing he gave the employer timely notice of the injury under Section 311. *City of Philadelphia v. Workers' Compensation Appeal Board (Williams)*, 851 A.2d 838 (Pa. 2004). The question of the timeliness of that notice is generally one of fact. *Katz v. Evening Bulletin*, 403 A.2d 518 (Pa. 1979). As a result, where the WCJ determines a claimant gave an employer timely notice, we must determine whether substantial evidence supports that finding. *Carrier Coal Enters. v. Workmen's Compensation Appeal Board (Balla)*, 544 A.2d 1111 (Pa. Cmwlth. 1988).[3]

---

[3] This Court's role is not to reweigh the evidence or review the credibility of the witnesses. *Sell*, 771 A.2d at 1251. The WCJ has exclusive province over questions of credibility and evidentiary weight. *A&J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). The WCJ may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Id.* Whether the record contains evidence to support findings other than those made by the WCJ is irrelevant; the critical inquiry is whether the record supports the findings actually made. *Id.* at 1238. We must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced therefrom. *Id.* at 1239.

13

Based on the facts found by the WCJ here, we conclude Claimant met his burden of proving he gave Employer notice of his injury as required under Section 311. The WCJ found: "[C]laimant's first diagnosis of [the] work[]related nature of this injury appears to be April or May 2021. [C]laimant provided notice to [Employer] by [P]etition on May 14, 2021." (WCJ Decision, 4/8/22, at 12.) In other words, the WCJ found that Claimant only learned his injuries were work related when Dr. Sing so informed him in April or May of 2021. This finding is directly supported by the testimony of Claimant and Foerst. Claimant testified that his leg wounds started as one painful knot or bump underneath the skin, and over time it eventually opened and became ulcerated. On October 28, 2020, Claimant told Foerst about the first wound and showed it to him. Foerst sent Claimant to Employer's panel physician, Dr. Mallis, who "was unable to substantiate a work-related type [of] injury." (R.R. at 193a.) Dr. Mallis stated that Claimant had "an infection or an abscess of this right leg, but the doctor was unclear of the origin of the infection." *Id.* Dr. Mallis noted that it was an infection of the right leg, non-work related, as there was not a direct correlation between the infection and the activity at work. *Id.* at 194a. Claimant was returned to full duty and the infection was deemed not work related. *Id.*

Although Employer contends that the WCJ should have concluded that Claimant knew or should have known that his first leg wound was work related on October 28, 2020, we note that neither Foerst nor Dr. Mallis, at that time, connected the wound to Claimant's work conditions either. Claimant's symptoms were not necessarily particular to a prolonged exposure to high heat from the truck engine, but could have been the result of any number of non-compensable conditions. This was borne out by the competing opinions of the medial experts. Moreover, Claimant's wounds, which started as lumps and knots underneath his skin, were not an obvious or

14

common injury apparent to the ordinary claimant.[4]  The WCJ found, based on his observations of Claimant's live testimony and his credibility determinations, that the first time Claimant knew or could have known it was work related was when Dr. Sing made the connection in his diagnosis of Claimant in April or May 2021.  Because the WCJ is the ultimate factfinder in workers' compensation cases, and the issue of whether a claimant has complied with Section 311 is a question of fact, *Storer v. Workers' Compensation Appeal Board (ABB)*, 784 A.2d 829, 831-32 (Pa. Cmwlth. 2001), taking the totality of the circumstances into consideration, the WCJ's findings were proper and supported by substantial evidence, and we will not disturb those findings now.

## B.  Substantial Competent Evidence/Reasoned Decision

Reasoned Decision

Employer next argues that the WCJ's decision as to the mechanism of injury was not reasoned because the WCJ did not articulate verifiable reasons for credibility determinations and did not adequately explain the basis for accepting certain portions of medical expert opinions while rejecting other portions.  Employer argues that the WCJ did not give a thorough explanation as to why he found Claimant and Dr. Sing credible.  Specifically, the WCJ offered the following statement about Claimant's

---

[4] Further, considering the flexibility of the reasonable diligence standard, we note that Claimant, a layperson, also believes he contracted diabetes mellitus through the open wound.  He testified on cross-examination at the January 11, 2021 hearing in this regard, as follows:

> Q.  You made a statement just a moment ago that this injury caused you to have diabetes. Is that your understanding of how your diabetes started?
> A. Yes. Through the open wound. Yes.
> Q. Okay. And it's your belief that you get diabetes through an open wound?
> A. From what I understand, yes.

(Hearing Transcript, 1/11/2021, at 13-14.)

credibility: "Claimant's testimony and the fact that his complaints are entirely consistent with the testimony and opinions of Dr. Sing, who this [WCJ] also finds credible. [Dr. Sing's] opinion is supported by [C]laimant's credible testimony." (FOF No. 8.) In other words, Employer contends that in the WCJ's view, the credibility of Claimant's testimony depended on the credibility of Dr. Sing, and vice versa, which is the antithesis of the "actual objective basis" standard required of a WCJ when reviewing deposition testimony.

Section 422(a) of the Act states that all parties are "entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." Section 422(a) of the Act, 77 P.S. § 834. Accordingly, the WCJ "shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section." *Id.* "The reasoned decision requirement has been interpreted to mean that, when a WCJ reviews deposition testimony, the WCJ must state an 'actual objective basis' for the credibility determination." *Michel v. Workers' Compensation Appeal Board (U.S. Steel Corp.)*, 966 A.2d 643 (Pa. Cmwlth. 2009). A decision is reasoned "if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003).

Here, Claimant testified before the WCJ about his work injury, his symptoms, and his notice to Employer. He testified that he drove the truck 12 to 15 hours per day. He explained that he was seated over the covered engine, and that his right leg was up against the heat of the engine all day. The WCJ had the opportunity

16

to assess Claimant's demeanor and found him credible. "[A] WCJ's observation of a witness's demeanor alone is sufficient to satisfy the reasoned decision requirement." *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 77 (Pa. Cmwlth. 2012). That Employer does not agree with the WCJ's credibility decision does not mean the WCJ's decision was not a reasoned one.

Moreover, the WCJ identified the evidence he accepted, the evidence he rejected, and his reasons therefor. The WCJ's explanations for his credibility determinations do not leave the Court imagining "why the WCJ believed one witness over another." *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 196 (Pa. Cmwlth. 2006). The WCJ's decision provides a reasonable basis for our appellate review and, thus, satisfies the reasoned decision requirement of Section 422(a) of the Act.

Substantial Evidence

Substantial evidence is such relevant evidence as a reasonable mind might accept to support a finding of fact. *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990). In evaluating a substantial evidence challenge, the Court may not reweigh the evidence or credibility determinations. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Additionally, "[the Court] must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence." *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1239 (Pa. Cmwlth. 2013). Finally, "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Lahr*

17

*Mechanical v. Workers' Compensation Appeal Board (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (quoting *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005)).

Employer argues that the WCJ's reasons for crediting Dr. Sing over Dr. Boc are not supported by substantial evidence. It submits that the only doctor who could explain, using objective clinical observations, the difference between a burn and a diabetic ulceration was Dr. Boc. Employer also contends that there is no evidence in the record which a reasonable person would accept as adequate to conclude that Claimant burned his leg on a 100-degree plastic engine cover.

Employer's arguments about the sufficiency of the evidence go to the weight and credibility of the evidence. "[T]he WCJ, as fact-finder, has complete authority over questions of witness credibility and evidentiary weight." *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). As laid out above, the WCJ credited Dr. Sing's opinion that the wound started from a burn which then became ulcerated because Claimant was unable, due to his diabetes, to feel the pain and diminished blood circulation. It is irrelevant that Dr. Boc testified otherwise. The WCJ "is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Williams v. Workers' Compensation Appeal Board (USX Corp.—Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004). The WCJ credited Dr. Sing's explanation over Dr. Boc's of how the leg wounds came about and developed, a determination within his exclusive province as factfinder.

Regarding the physical conditions of the truck cab where Claimant sat, evidence showed that the engine itself heated up to 180 to 200 degrees while Claimant drove the truck. The WCJ simply believed that Claimant's leg wounds were caused by

18

prolonged contact with the hot engine cover for 12 to 15 hours a day five days a week, and was not swayed by Employer's temperature tests.

Employer also takes issue with the WCJ's finding, in crediting Claimant, that "Claimant has consistently reported a similar history of his mechanism and progression of injury to the medical providers he has seen." (FOF No. 8.) Employer argues that a review of Dr. Mallis' October 2020 records indicates that Claimant could not identify a particular mechanism of injury. Therefore, according to Employer, the evidence does not support a credibility determination based on a purported consistency. This argument is also unavailing. Although Claimant may not have mentioned the heat from the truck engine to Dr. Mallis, the medical records from the ER did document that Claimant noted he was a truck driver and in October 2020 he was driving the truck and the heat of the truck on his leg eventually caused the bumps on his leg to breakdown and he formed large ulcerations that continued to progress over the following six months. Those medical records were sufficient to support the WCJ's finding.

### C. Benefits Calculation

The Board determined that Health Care Builders did not qualify as a "concurrent employer" because it was not Claimant's employer at the time of injury. Accordingly, it concluded that the WCJ did not err in failing to offset Claimant's benefits by his income from Health Care Builders.

Employer argues that the Board misconstrued the issue it raised on appeal. Employer asserts it did not claim that Health Care Builders was a concurrent employer and did not challenge the WCJ's calculation of Claimant's average weekly wage based on Health Care Builders being a concurrent employer. It concedes that Health Care Builders was never a "concurrent employer." Rather, it had argued to the Board that the WCJ erred by failing to allow Employer to **take an offset** for Claimant's **post-**

**injury earnings** from Health Care Builders. Employer notes this is a different issue than the one the Board addressed in its opinion.

In support of its argument that it is entitled to an offset credit, Employer argues, Claimant's post-injury earnings go to the extent of his disability (*i.e.*, loss of earning power) and thus should have been considered in calculating and awarding only **partial disability benefits from April to September 2021**, rather than the **total** disability benefits the WCJ awarded. Employer argues that here, the WCJ found that Claimant worked 40 hours per week for Health Care Builders, earning $11.00 per hour, after he stopped working for Employer, and that despite Claimant's return to work full time earning $440.00 per week, the WCJ ordered Employer to pay temporary total disability as of April 23, 2021, and ongoing at the rate of $994.98 per week. *Id.* at 274a-75a. Employer points out that the WCJ did not make any factual findings regarding Claimant's post-injury earnings with Health Care Builders, or order Claimant to provide Employer with his earnings information to allow the calculation of an offset. Thus, it argues, the WCJ's decision to order payment of total disability benefits rather than partial disability benefits is not supported by sufficient substantial evidence, insofar as any benefits may be found to be due and owing.

A claimant is only entitled to wage loss benefits based on a loss of time-of-injury earning power, which is measured by the average weekly wage as of the date of injury. Section 306(a) of the Act, 77 P.S. § 511. Section 306(a)(2) of the Act provides: "Nothing in this act shall require payment of total disability compensation benefits under this clause for any period during which the employe is employed or receiving wages." 77 P.S. § 511(2). Under Section 306(b) of the Act, a claimant is entitled only to partial disability benefits if he retains any "earning power" after a work injury. 77 P.S. § 512(b). Partial disability benefits may be measured by comparing the

claimant's earnings before the injury occurred to the claimant's post-injury earnings. *Scott v. DeAngelis*, 281 A.2d 172, 176 (Pa. Cmwlth. 1971) (affirming Board's finding that the claimant remained partially disabled and its conclusion that his disability caused a loss of earnings measurable by the difference between his earnings before the injury in full-time heavy labor and his earnings after the injury as a part-time taxicab driver). Here, Claimant had earnings from Health Care Builders post-injury from April 2021 to September 2021, but the WCJ and the Board awarded total, not partial, disability benefits during that period. Employer raised this issue in its appeal to the Board. *See* Certified Record, Item No. 7. But the Board did not address this issue beyond stating that Health Care Builders was not a concurrent employer and therefore those earnings should not be counted in calculating Claimant's compensation, which was not the issue raised by Employer. Because the Board left the question of the extent of Claimant's loss of earning power completely unanswered and whether his benefits should be adjusted accordingly, we must reverse and remand.

### IV. Conclusion

The Board's decision is affirmed in part and reversed in part. The Board's decision is affirmed insofar as it affirmed the WCJ's conclusion that Claimant provided timely notice of his injury to Employer, that the WCJ's decision was reasoned, and that the WCJ's credibility determinations were supported by substantial evidence. We reverse on the issue of the total benefits awarded between April 2021 and September 2021. Claimant had earnings from Health Care Builders during that time, but the WCJ and the Board awarded total and not partial disability benefits during that period. The matter is remanded for consideration of whether Employer is entitled to a credit for Claimant's post-injury earnings consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Newman & Company, Inc., : 
              Petitioner :   No. 1261 C.D. 2022
                       :
          v. : 
                       :
Mark Warner (Workers' : 
Compensation Appeal Board), : 
              Respondent : 

## *ORDER*

AND NOW, this 30th day of November, 2023, the Workers' Compensation Appeal Board's (Board) October 27, 2022 decision is hereby AFFIRMED, in part, and REVERSED, in part, and this matter is REMANDED, in part. The Board's decision is affirmed insofar as it concluded that the notice provided by Mark Warner to Newman & Company, Inc., was timely, that the Workers' Compensation Judge's (WCJ's) decision was reasoned, and that the WCJ's credibility determinations were supported by substantial evidence. We reverse on the issue of the total benefits awarded between April 2021 and September 2021. Mark Warner had earnings from Health Care Builders during that time, but the WCJ and the Board awarded total and not partial disability benefits during that period. The matter is hereby remanded for consideration of whether Newman & Company, Inc. is entitled to a credit for Mark Warner's post-injury earnings consistent with this memorandum opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge